### JOHN C. ADAMS V. CYNTHIA COUCH, *et al.*

*[Opinion Filed April 4, 1891.]*

1. DEMURRER.—*Facts Admitted.* Where a pleading is demurred to, all
the facts well pleaded are admitted for the purpose of the demurrer.

2. EJECTMENT.—*Duplicate Receipt.* Section 411 of Nebraska civil code
does not authorize a recovery in ejectment on a register and receiver's
duplicate receipt.

3. LAND DEPARTMENT.—*Courts.* The land department of the govern-
ment will not be interfered with by the courts while it has charge of
any contest proceedings between adverse claimants of the land.

*Appeal from District Court of Oklahoma County.*

*Amos Green, J. L. Brown and H. S. Cunningham,*
for Appellee.

*Frank Dale, A. B. Hammer, Selwin Douglas and
Grant Stanley,* for Appellant.

This is an ejectment which comes to this court on ap-

peal from the third district of Oklahoma county, John G. Clark, Justice.   The petition is as follows:

"The plaintiff, a citizen of the United States, residing in the county aforesaid, brings suit against said defendants, who are also residents of the aforesaid territory and county and citizens of the United States, and for cause of action says, that the plaintiff is the homestead settler on the following tract of land situated and being in the county of Oklahoma and territory aforesaid, and more particularly described as follows: The S. W. ¼ of sec. 33, tp. 12 N, of range 3 W., containing 160 acres.   That on the 23rd day of April, 1889, he filed homestead entry on said tract of land in the United States land office at Guthrie, Oklahoma, being application and homestead entry No. 9, and received duplicate receipt of the receiver of said land office, being duplicate receipt No. 9, a copy of which is hereto attached and marked Exhibit "A."   Plaintiff states that by reason of his settlement and entry aforesaid, he became the equitable owner and legally entitled to the possession of the aforesaid land, and that he still resides on a part of said land and occupies and cultivates the same as his homestead, and that he is legally entitled to the possession of the entire tract under and by virtue of his aforesaid settlement and homestead filing; that under and by virtue of section 411 of the civil code of practice, under the title of evidence of the statute of the state of Nebraska, made applicable to and extended over the Territory of Oklahoma by provisions of the act of congress approved May 2, 1890, establishing and providing a territorial government for said. Territory it is provided as follows: The usual duplicate receipt of the receiver of any land office or, if that be lost or destroyed, or beyond the reach of the party, the certificate of such receiver that the books of his office show the sale of a tract of land to a certain individual, is proof of title equivalent to a patent against all but the holder of an actual patent.   The plaintiff states that being the owner aforesaid and entitled to the possession of the aforesaid tract of land said defendants did, on or about the first day of October, 1889, unlawfully enter upon and occupy about forty-five acres off the south end of

said tract of land, being all that part lying south of the extension of the street called Grand avenue, of the City of Oklahoma, on and through said tract of land and all the east eighty acres of said tract of land, and still illegally, unlawfully and forcibly hold and occupy the part of said tract aforesaid to the damage of the plaintiff to the sum of five hundred dollars. The plaintiff says he is the legal owner and entitled to the possession of the aforesaid land so wrongfully, illegally and forcibly occupied, held and detained as aforesaid by said defendants, wherefore he prays judgment for the recovery of the possession of said land together with five hundred dollars damage, for the wrongful detention thereof and for other proper relief.

A. GREEN,
C. M. GREEN,
D. C. LEWIS,
H. S. CUNNINGHAM,
Attorneys.

John C. Adams says he is the plaintiff, and that he believes the statements of the foregoing petition are true. AMOS GREEN,
Attorney for J. C. Adams.

Subscribed and sworn to before me this 8th day of September, A. D. 1890.

WILL H. CLARK, Clerk
By HENRY P. GREEN, Deputy.

*Copy Exhibit "A."*

Copy 4, 138. Homestead. Receiver's duplicate receipt No. 9.

*Application No. 9.*

RECEIVER'S OFFICE. }
GUTHRIE, OK. TY, April 23, 1889. }

Received of John T. Adams the sum of fourteen dollars —— cents, being amount of fee and compensation of register and receiver for the entry of the S. W. $\frac{1}{4}$ of sec 33 in tp. 12 N., of range 3 W. Under section 2290 Revised Statutes of the United States.

$14.00. C. M. BARNES, Receiver.

The special answer of Cynthia Couch is as follows:

"Comes now Cynthia Couch, one of the above defendants and for answer to plaintiff's complaint and petion herein states:

" 1. That to-wit, April 22, 1889, she was the lawful wife of William Couch and remained his wife until he departed this life on ———— 1889.

" 2. That to-wit, April 22, 1889, said William Couch settled upon, improved, and began a residence upon the S. W. ¼ sec. 33, tp. 12 N., range 3 W., the same being the land described in plaintiffs petition, filed herein, and continued such settlement, residence and improvement upon said land until he departed this life.

"3.. That at the time said William Couch settled upon the land as aforesaid, the same was a part of the public domain, open to settlement, under and by virtue of the provisions of the general homestead law, which said law was duly enacted by the Congress of the United States and was in force and effect in the Territory of Oklahoma, and was the only law under which said land could be segregated from the public domain of the United States.

"4. That afterward and within ninety days from the date of his said settlement, as aforesaid, said William Couch filed in the United States land office at Guthrie, Ok. Ter., his homestead application to enter the S. W. ¼, Sec. 33, Twp. 12 N. of Range 3 W., as his homestead, and at the same time submitted affidavits to show his qualifications to enter said land under the general provisions of the homestead law applicable to the Territory of Oklahoma, and which said application so filed as aforesaid was by the land office at Guthrie, Ok., rejected for the reason that said land had been previously entered as a homestead by the plaintiff in this action.

"5. Defendant further avers that within ninety days from April 22, 1889, the said William Couch filed in the United States land office at Guthrie, Ok., his contest affidavit duly corroborated, in manner and form as provided by the rules of practice, in force in said land office, and in said contest affidavit alleged in substance that he, William Couch, settled upon, improved and began his residence on the S. W. ¼, Sec. 33, Twp. 12 N.,

of Range 3 W., on the 22nd day of April, 1889, prior to the date upon which said John Adams filed his homestead entry for said tract of land, and prior to the date on which said John C. Adams settled upon the same, and further alleges that said John C. Adams was disqualified from entering any land as a homestead, within the Territory of Oklahoma, for the reason said Adams entered the Territory of Oklahoma subsequent to March 2, 1889, and prior to noon, April 22, 1889, with the intent to settle upon lands therein, and asked the register and receiver to grant him relief by cancelling the homestead entry of said Adams and to permit his, William Couch's application for said land, to be placed on record.

"6. Defendant avers that at the time said William Couch settled upon the tract of land as aforesaid, and at the time he filed his homestead application therefor, and contest affidavit against the entry of plaintiff herein, the United States land office at Guthrie, Ok. Ter., was, by virtue of the acts of Congress, vested with full jurisdiction to try and adjudicate all questions arising between plaintiff herein and said William Couch, relating to the rights of said parties to file their entry for said land, and to try and determine which of said parties had the exclusive right to occupy and hold possession of the same, and further, that the United States land office, now located at Oklahoma City, Ok, Ter., now has all the powers and jurisdiction heretofore vested in the Guthrie land office, and that the matters in controversy pending between the aforesaid parties are still undetermined in said land office at Oklahoma City.

"7. Defendant further avers that the United States land office at Oklahoma City has full and complete jurisdiction to determine all matters set forth in plaintiff's petition filed herein; that such jurisdiction is, by the Congress of the United States, vested in said land office, and that Congress has, by special enactment, created the land office at Oklahoma City for the purpose of trying all matters set forth in the plaintiff's petition, and that this court has no jurisdiction to hear or determine the questions set forth in said petition.

"8. Defendant further avers that she, as the widow of William Couch, deceased, is entitled to all rights in

the tract of land described in plaintiff's petition which were vested in William Couch at the time of his death.

"9. Defendant denies the right of the court sitting in and for the county of Oklahoma, Ok. Ty., to eject the defendant from the tract of land described in the plaintiff's petition, or in any manner to interfere with her use and occupation of the same.

"Wherefore defendant prays a dismissal of this action.

CYNTHIA COUCH,<br>
By her Att'y, FRANK DALE."

John M. Dawson filed an answer which is as follows:

"Comes now John M. Dawson, one of the above named defendants, and for a separate answer to the complaint of the plaintiff says:

"*First.* That he denies each and every material allegation made by the plaintiff in said complaint.

"*Second.* Defendant denies that plaintiff is the owner of or entitled to the possession of said tract of land described in his complaint, as against this defendant.

"*Third.* Defendant alleges the truth to be that the supposed title of plaintiff was obtained illegally, wrongfully and fraudulently for that whereas, on April 23, 1889, at Guthrie, Indian Territory, and before the issuance of the receipt set out in plaintiff's complaint, he, the said plaintiff, was required as a condition prior and did take and subscribe a certain affidavit in words and figures, towit:

"LAND OFFICE AT GUTHRIE, I. T., April 23, 1889.

"I, John C. Adams, of Oklahoma applying to enter (or file) for a homestead do solemnly swear that I did not enter upon and occupy any portion of the lands described and declared open to entry in the president's proclamation dated March 23, 1889, prior to 12 o'clock noon, of April 22, 1889.

(Signed) JOHN C. ADAMS.

Sworn and subscribed before me this 23rd day of April, 1889.

(Signed) JOHN I. DILLE,<br>
Register.

"That said affidavit was material and without which said receipt would not have been issued. That said John I. Dille was an officer or the United States duly empowered to administer oaths for such purposes; defendant avers that said affidavit was wholly false and untrue and that the plaintiff did enter upon and occupy a portion of the lands described and declared open for entry in the president's proclamation dated March 23, 1889, prior to 12 o'clock, noon, of April 22, 1889, by reason whereof the said receipt set forth in plaintiff's complaint was illegally, unlawfully and fraudulently obtained and should not be pleaded as evidence of title or right of posession in this action as against the defendant.

"*Fourth.* Defendant further avers that on May 23, 1889, he filed in the land office at Guthrie, I. T., his affidavit of contest against the homestead entry of the plaintiff's, charging plaintiff with being disqualified by reason of the facts set forth in the third paragraph of this answer, from making entry of said lands. That this defendant was the first legal settler and occupant upon said tract, a hearing on said contest has been ordered by the land office at Oklahoma City before which said cause is now pending.

"*Fifth.* Defendant further avers that the title to said land described in plaintiff's complaint is in the United States and that by reason thereof and his contest aforesaid and his application for title thereto, he has fully conformed and complied with all the conditions required by the Interior Department of the United States in prosecuting said contest and has an equitable title and by reason of prior occupancy a right to the possion of said land.

"*Sixth.* That the defendants, Cynthia Couch and Robert Higgins claim adversely to this defendant and that they have some right or equity in and to the title and possession of said tract of land; that the claim and equitable title of this defendant is superior to that of either of said defendants. That the same would be destroyed and defendant irreparably injured by ousting him of his possession before the final determination of the respective claims to the title of said land.

"*Ce enth*. That the defendant went into possession of the N.E. ¼ of said S.W. ¼ sec. 33, tp. 12, N. of range 3, W., I. M., while the same was open, unimproved and unoccupied. That he has placed thereon permanent improvements of the value of $1,500 and occupies the same as a permanent residence with his family. Defendant here sepecifically disclaims any act or intention to do in any manner trespass upon or interfere with the enclosure, improvement or possession of plaintiff.

"*Eighth*. That there is now a suit pending between the same parties and for the same subject matter before the United States land office at Oklahomo City, Ok. Ty. That the same is undetermined and that said land office has the original and exclusive jurisdiction to hear and determine the respective rights of all parties litigant in and to the title to said tract of land described in plaintiff's complaint.

Wherefore defendant, John M. Dawson, prays the judgment of the court in his behalf.

(Signed) JOHN M. DAWSON,
By his Att'ys,
HAMMER, HUDSON & LEACH."

Robert M. Higgins filed no answer, but relies upon the following stipulation and agreement made by counsel, that in the hearing of this case the "rights of alleged prior settlers might be passed upon same as if raised by answer, also rights of contestants as to posession when the entry is made after a filing what right such give as to possession same as if set up in answer."

This agreement seems to cover substantially all the questions raised by the answers of Couch and Dawson. To these answers the plaintiff filed the following demurrer:

"That said answers do not state facts sufficient to constitute any defense to the cause of action in plaintiff's petiticn stated."

*Amos Green* and *C. M. Green* and *H. S. Cunningham* for appellant.

*Dale* and *Stanley, A. B. Hammer* and *Selwyn Douglas* for appellee.

The opinion of the court was delivered by

SEAY, J.: The facts as alleged and denied in the plead-ings may be briefly summarized as follows: The petition substantially states that plaintiff being a citizen of the United States, having the right so to do filed his home-stead entry (No. 9) for the S. W. ¼ of sec. 33. tp. 12, N. of range 3 W., in the United States local land office and that upon full compliance with the law and residing upon, and being in possession of a part, he became the equitable owner and legally entitled to the possession of the whole of said tract of land.

That the defendants afterward unlawfully entered upon and occupied part of the land to plaintiff's damage in the sum of $500 for the possession of which and damages, he asks judgment.

Defendant, Cynthia Couch, says her husband in his lifetime settled upon, improved and began a residence on the property in dispute on April 22d, 1889, and con-tinuously resided thereon until his death. Since which time she has resided thereon and held unbroken posses-sion of his title; that within 90 days after the 22d of April, 1889, he took steps in pursuance of law to enter said land and his application was rejected because of the previous entry of the land by plaintiff, whereupon he filed his contest as provided by law, and asked the cancellation of plaintiff's entry for the reason that plain-tiff entered the Territory subsequent to the 2d of March and prior to the 22d day of April, 1889, in violation of the law. That contest is now pending before the local land office at Oklahoma City, which has exclusive jurisdic-tion to hear and determine all matters of controversy between them, and that this court has no jurisdiction to interfere with her use and occupancy of the land de-scribed.

John M. Dawson, after denying each and every alle-gation of the petition and charging plaintiff with having

forfeited his rights by entering the Territory prior to 12 o'clock, noon, of April 22d, 1889, and occupying a portion of the land in controversy avers, that he (Dawson) on the 23d day of April, 1889, filed his contest affidavit charging the plaintiff with the violation aforesaid, and avering that he, defendant, was the first legal settler and occupant upon said land, and that said contest is now pending and undetermined before the local land office at Oklahoma City; that the title is still in the United States, but by reason of the foregoing facts he has an equitable title, and on account of his prior settlement and occupancy he is entitled to the possession of the land; that a judgment of ouster would destroy his title and deprive him of his home which is of the value of $1,500 and which he built upon the land and in which he now resides with his family.

Dawson then pleads the pendency of the contest proceedings as a bar to this action and denies the jurisdiction of this court to hear and determine it.

Robert W. Higgins relies upon the stipulations which seem to be broad enough to' cover all the questions raised by the answers of Couch and Dawson.

.The plaintiff bases his right to recovery in this case upon the fact that he entered the land and that his receipt of the receiver entitles him to the posession of the whole tract under the provisions of section 411, p. 907, Nebraska Statutes, which was put in force here by the organic act.

The defendants rely for their defense mainly upon three propositions.

I.   That the plaintiff entered the Territory for the fraudulent purpose of securing a homestead prior to the 22d day of April, 1889, without authority of law.

II,   That they are prior settlers and took legal steps to secure their rights within 90 days after actual settlement.

III. ·That the matters now in controversy are pending before the local land office, which has exclusive jurisdiction to hear and determine them, and that this court has no jurisdiction in the premises

Plaintiff by demuring to the defendants' answers admits all the facts well pleaded therein, and asks this court to declare as a matter of law said facts are sufficient to constitute any defense to the cause of action as stated.

The case of *Wilson v. Fine*, 38 Fed. Rep. 789, is referred to as authority for plaintiff. This is an ejectment case in which plaintiff claims under a "duly certified final certificate from the proper officers of the United States land department under the homestead laws; that plaintiff being in possession of the premises as the legal owner, the defendant unlawfully and with force entered upon the same and ejected the plaintiff therefrom and has ever since wrongfully held posession thereof from the plaintiff."

To this complaint the defendant demurred for that the same "does not state facts sufficient to constitute a cause of action." The only question was as to the sufficiency of the petition.

The court said this plaintiff is "the assignee and vendee of a recognized settler on the premises under the homestead law to whom a certificate was issued to the effect that he had complied with the law and was entitled to a patent." The defendant being a mere intruder and trespasser, and plaintiff being entitled to the patent, wc think the demurrer was properly overruled.

The case of *John Calwell v. J. E. Smith*, Washington 922, (Decided in 1860,) is also quoted as authority for the position taken by the plaintiff.

We are unable to see that it supports plaintiff's contention. The complaint alleges that plaintiff, claiming

under the preemption law of the United States, was in the exclusive possession of 160 acres of land, was wrongfully ousted and deprived of his possession by the defendant and seeks a writ of restitution."

The case was tried by a jury who found that plaintiff was in the possession of the whole tract, and was wrongfully ousted by defendant.

It does not appear that any answer was filed, or whether any defense was set up, and yet the court held that it had no jurisdiction to determine upon conflicts between two persons claiming by priority of settlement, (both of whom are in actual possession of different portions of the tract) so far as to dispossess one or the other from the entire claim, and then declined to give the plaintiff any relief until he filed a stipulation not "to deprive the defendant of such possession as he may have, of his dwelling house or enclosures made and exclusively occupied by himself."

The court in that early day saw the necessity of leaving such conflicts under the control of the proper officers of the land department.

Section 411, supra, provides that:

"The usual duplicate receipt of the receiver of any land office * * * is proof of title equivalent to a patent against all but the holder of an actual patent."

What sort of a receipt is meant by this section? Is it what is known as the "filing papers," which is the initiatory step to secure the inceptive right to the land, or does it refer to the "final receipt," which entitles the holder to a patent?

In *Morton v. Green*, 2 Neb. 458, which is an ejectment under section 411 supra, the court held that ejectment would not lie; that to entitle him to recover the plaintiff "must produce a patent or show that he holds a final certificate in harmony with the government."

In *Dale v. Henneman*, 12 Neb. 221, (224), the court says,

"To entitle the plaintiff to recover under the code he must possess a legal title in the premises, and state in his petition that he is entitled to the possession."

When he secures his "final certificate" which shows that he has paid for the land and is entitled to a patent, it would seem that such a title ought to be sufficient to support ejectment for it is held in 3 Howard, 460, that,

"The final certificate obtained on the payment of the money is as binding on the government as a patent."

*Langdon v. Sherwood* was ejectment. That case went up on appeal from Nebraska and is reported in the 124 U. S. Rep. 74. Plaintiff offered in evidence a certificate of the register of the land office at Omaha, date, August 14, 1857, of the location, by one Wright of a military land warrant upon the land in controversy, which was objected to. Mr. Justice Miller quoted with approval from *Bagnell v. Broderick*, 13 Pet. 436. that,

"Congress has the sole power to declare the dignity and effect of titles emanating from the United States; and the whole legislation of the federal government, in reference to public lands, declares the patent the superior and conclusive evidence of legal title; until its issuance the fee is in the government, which, by the patent, passes to grantee; and he is entitled to recover the possession in ejectment."

He then says:

"The defendants in error rely upon section 411 of the Nebraska code of civil proceedure, which is analogous in its provisions to the statute of Arkansas, referred to in the case of Hooper vs. Scheimer."

After quoting the section in full he says:

"But, whatever effect may be given this statute it is obvious that in the circuit court of the United States it cannot be received in establishing the legal title of the holder of such certificate. That certificate is given for

the purpose of vesting in the receiver of it an equitable right to demand the patent of the government after such other proceedings as the laws of the United States and the course of business in the departments may require."

On page 85 he further says:

"To receive this evidence and to give it the effect of proving a legal title in the holder of such receipt, because the statute of the state proposes to give it such an effect, is to violate the principle asserted in Bagnell vs, Broderick; that it is for the United States to fix the dignity and character of the evidences of title which issues from the government. And it is also in violation of the other principle settled by the cited decisions, that in the courts of the United States a recovery in ejectment can be had alone upon the strict legal title, and that the courts of law do not enforce in that manner the equitable title evidenced by these certificates."

It seems to be clear that the supreme court of Nebraska construed section 411 to refer to the final receipt which vests a title in the holder and entitled him to a patent, and it is our duty to follow that construction. In that state there are several kinds of entry of United States lands for which duplicate receipts are taken, to-wit: The homestead, the pre-emption, timber culture and desert lands. The original entry is evidenced by filing papers. After all the requirements of the laws of Congress relating to homestead, pre-emption, timber culture or desert lands, as the case may be, have been fully complied with, the plaintiff becomes entitled to the "final receipt," which in its turn arms him with a legal title against all the world except the United States, and as against the government itself, the right to demand and receive a patent.

In consideration of the fact that Congress, in organizing this Territory, gave us certain of the laws of the state of Nebraska for our local government, until such time as our territorial legislature should enact a code;

that section 411 supra was given to us as a rule of evidence only, if it should be, and so far as it might be "locally applicable" and not inconsistent with the organic act, or with the constitution and laws of the United States; and in view of the universal rule of the highest court of the nation that a patent gives the superior title, without which ejectment cannot be maintained in the courts of the United States, the conclusion is inevitable that section 411 is not "locally applicable" here. Certainly not with the construction placed upon it by the plaintiff.

We might now consider the demurrer with reference to the defenses set up in the answers as to the disqualification of the plaintiff to enter the land, the prior settlement of the defendants, the setting up the pendency of the contest proceedings by the defendants and the plea to the jurisdiction of this court, and stop there; but as the eminent counsel on both sides, (who took a wide range in the argument) expressed a desire and signed an agreement (heretofore referred to) to the effect that these questions should be considered by the court, we are not unmindful of the great importance, (to the home-steaders throughout the Territory) of a careful discussion at this time, of these questions. While we regard it ordinarily as the better course to pass only upon such questions as are decisive of the case, we feel that for the public good and for the purpose of checking (so far as it is within the scope of our power and duty) unnecessary and expensive litigation, we should at least give our views on the question of jurisdiction, raised by the pleadings, the decision of which will dispose of the other questions preceding it.

In the case of *Empy v. Plugert*, 64 Wis., 603, the plaintiff alleged in his complaint that he settled on the land in dispute as a homestead claimant under the laws of the United States, and complied with the require-

ments of the law by continued residence and cultivation, so as to entitle him to the final certificate therefor, of which fact he made due proof before the land department, and that, by a final decision of the secretary of the interior, he was denied the right to said certificate, and that he has continued to reside upon and keep possession of said land. That the defendant entered upon the land by force, regardless of the plaintiff's rights, paid the amount required by law, and obtained a certificate, and now claims that he is entitled to all the rights of a homestead claimant. It is further alleged by said plaintiff that when his proof was presented for the purpose of obtaining his final certificate, the defendant contested his rights and, by perjury and fraud, defeated him and caused the secretary of the interior to declare plaintiff's entry void, and gave the certificate to the fraudulent entryman, the defendant.

The plaintiff further alleged that he had done every act and performed every requirement of the law to entitle him to a patent to the land. He then prays for judgment, that he has complied with the homestead laws and is entitled to the land.

To this complaint the defendant demurred and the court sustained the demurrer. The land office department having decided against the plaintiff the defendant has settled upon the land as a homestead claimant and holds a certificate as such. ''That certificate gives the defendant no right to the land, and he must thereafter perform all the conditions of the homestead law, before he will be entitled to a certificate upon which the patent can be issued.'' After declaring that he had as yet secured no right to the land, but the mere privilege or permission to enter upon it for the purpose of completing title, by residing thereon five years, the court says:

''What right or claim to said land or interest in it has he (defendant) that he could *release* to the plaintiff ac-

cording to the prayer of the complaint. Has he the possession? So has the plaintiff. If he is an intruder or trespasser without legal right (and he has no right if the plaintiff is entitled to the patent of the United States, as he claims) then the plaintiff's remedy, if he has any, is in the proper possessory action of the law. The defendant's right of entry upon the land is a legal right, if he has any. If he has none, then he has no right or title to release. If he has a right so to enter, then neither a court of equity or law could extinguish it, or adjudge its release to another. But, if all the right the defendant claims is released to the plaintiff, it would not make his right or title any better. It is apparent that the remedy sought by this part of the prayer would be ineffectual and of no benefit to the plaintiff. If the defendant should release to the plaintiff whatever right or claim he may have, it would not give the plaintiff any more right than he had before by reason of his settlement and cultivation of the land for the requisite time. The law does not provide for any action or adjudication upon such a preliminary entry. The land officers decide nothing. The land may or may not be subject to entry. That is the risk of the applicant."

On page 611 of the opinion it is said,

"If the court in such a case should decide that the decision of the secretary was wrong and based upon perjured testimony; and that the plaintiff was entitled to the final certificate and the patent for the land, and go further, even, and reverse, set aside, vacate or annul his decision and judgment, how could it be enforced and what would be its effect? Neither the United States nor the executive departments of the government are amenable to the state courts. The decision would still stand and be enforced, and a patent would not be issued to the plaintiff, and might be issued to the defendant upon his final proof. The judgment of the court in such a case could not operate upon or in any way effect the title of the land (for the title is still in the government), or upon the right to the title, which would be respected by the government and its departments."

Then, after holding that the courts may have juris-
diction to inquire into the homestead right of a home-
stead entryman to a patent, and may reverse the de-
cision of the land department when procured by fraud
and perjury, it says that jurisdiction can be effectually
exercised only when the title is vested in the party
amenable to the state courts.

"But in exercising such a jurisdiction the court will
not disturb the adjudications of the land officers in re-
spect to such right, except in clear cases of fraud, mis-
take, perjury or violation of law."

This doctrine is well settled.   Referring to *Lamont v.
Stimson*, 3 Wis. 545; *Bross v. Wiley*, 6 Wis. 485; *Lom-
bard v. Cowham*, 34 Wis. 486; *Martin v. Green*, 2 Neb.
441; *Borbett v. Wood*, 32 Minn. 509; *Gains v. Thomp-
son*, 7 Wall 347; *Secretary v. McGarrahan*, 9 Wall
298; *Lichfield v. Register*, 9 Wall 575; *Johnson v.
Townsley*, 13 Wall 72; *Shepley v. Cowan*, 91 U. S. 330,
*Marquiz v. Frisbie*, 101 U. S. 473; *Smelting Co. v.
Kemp*, 104 U. S. 636; *Steel v. Smelting Co.*, 106 U. S.
447; *Baldwin v. Stark*, 107 U. S. 463; *Smith v. Ewing*,
23 Fed. Rep. 741; *Casey v. Vassor*, 4 McCrary C. C.
127, holding that the land department still have juris-
diction of this case, the judgment of the court below
sustaining the demurrer was affirmed.

In *Marquiz v. Frisbie*, which was a case taken up by
appeal from California to the supreme court of the
United States, plaintiff asked the reversal of the decis-
ion of the department of the interior against his claim
as a pre-emptor to a certain quarter section of land
upon the ground that his title was paramount to that of
the defendant.   Defendant demurred; demurrer was
sustained.   The legal title was outstanding in the
United States and the matter was still *in fieri*, and un-
der the control of the land office, and the supreme court
sustained the court below, saying,

"We have repeatedly held that the courts will not interfere with the officers of the government in the discharge of their duties in the disposal of public lands, either by injunction or mandamus. (*Litchfield v. Register and Receiver*, 9 Wall 552; *Secretary v. McGarrahan*, 9 Id. 298.)

"And we think it would be quite as objectionable to let a state court, while such a question was under the consideration and within the control of the executive departments, to take jurisdiction of the case, by reason of their control of the parties concerned, and render decree in advance of the action of the government, which would render its patent a nulity, when issued. (*Johnson v. Townsley*, 13 Wall 72; *Shepley v. Cowan*, 91 U. S. 330.)

"We think the appropriate officers of the land department have been constituted a special tribunal to decide such questions and their decisions are final to the same extent that those of other judicial or quasi judicial tribunals are. (*Vance v. Burbank*, 11 Otto 514.)"

Mr. Justice Miller, in the *United States v. Schurz*, 12 Otto 378, which was a mandamus proceeding to compel the secretary of the interior to deliver a patent to the relator, held that the patent having been issued and recorded, the act of delivery was merely ministerial, and directed the supreme court of the District of Columbia to grant the writ. But in the same decision the learned Justice held that,

"Congress has also enacted a system of laws by which rights to these lands may be acquired and the title of the government conveyed to the citizen. This court has, *with a strong hand*, (the italics are ours), upheld the doctrine that so long as the legal title to these lands remained in the United States and the proceedings for acquiring it were as yet *in fieri*, the court would not interfere to control the exercise of the power thus vested in that tribunal. To that doctrine we still adhere."

The question of jurisdiction is elaborately discussed

and numerous authorities cited from which copious quo-
tations are made in the case of *Forbes v. Driscoll,* 31 N.
W. Rep. 633, by the supreme court of Dakota.    That
was an action to recover possession of 160 acres of land
described therein.    Plaintiff alleges that he is now, and
has been ever since the 20th day of May, 1879, entitled
to the possession of the land described; he bases his
title upon the declaratory statement of pre-emption
filed in the United States land office at Deadwood, Da-
kota, and then avers that in January, 1880, while he
was in the lawful, actual, peaceful, quiet and exclusive
possession of said premises, and entitled thereto, the
defendant unlawfully entered into and upon the same,
and ousted and ejected the plaintiff therefrom, and
still wrongfully withholds from the plaintiff the posses-
sion of the premises, to his damage in the sum of
$2,000.

There was no objection by demurrer or otherwise to
the complaint by defendant, but he filed a general
denial and set up new matter as a defence.    Defendant
alleges all the facts which under the law entitled him to
settle upon the lands by pre-emption and avers that he
filed his declaratory statement according to the pre-
emption laws of the United States, at the Deadwood
land office, and immediately thereafter established his
residence thereon, and cultivated continuously the
lands as a homestead, and pleads the pendency of a
contest before the register and receiver at Deadwood
between himself and plaintiff.

Upon these issues the parties went to trial before a
jury, and without objection plaintiff introduced testi-
mony tending to prove the allegations in the pleadings,
and the court gave and refused instructions and the
jury brought in a general verdict for the plaintiff.  Judge-
ment for the plaintiff was rendered thereon and an ap-
peal was prosecuted.

The court then says,

"This question is therefore, now presented to the court; can a court of law, while a contest is pending, or prior to the decision of the land department, hear and determine the contestant's right of pre-emption, in determining his right to posession of public lands? Plaintiff relies for his right to recover upon section 650 of the Dakota code of civil proceedure which provides as follows:

"Any person settling upon the public lands belonging to the United States, on which settlement is not expressly prohibited by congress or some department of the general government, may maintain action for injuries done the same, also an action to recover possession thereof, in the same manner as if he posessed a fee simple title to said lands."

The court says,

"It was enacted without doubt, to set at rest any question that might arise as to the right of the settler upon public lands to protect his improvements and possession against a mere intruder or tresspasser," refering to *Atherton v. Fowler*, 96 U. S. 519.

The questions, "Does the policy of the pre-emption law authorize a stranger to thrust these men out of their houses, seize their improvements and settle exactly where they settled, and by these acts acquire the initiatory right of pre-emption? The generosity by which congress gave the settler the right of pre-emption was not intended to give him the benefit of another man's labor, and authorize him to turn that man and his family out of their home. It did not propose to give its bounty to settlements obtained by violence at the expense of others. * * * * * It would have shocked the moral sense of the men who passed these laws if they had supposed that they had extended an invitation to the pioneer population to acquire inchoate rights to the public lands by trespass, by violence, by robbery, by acts leading to homicides and other crimes of less moral turpitude."

Further on the court says in the same case,

"Undoubtedly there have been cases and may be cases again, where two persons making settlement upon the same quarter-section of land, may present conflicting claims to the right of pre-emption of the whole quarter-section, and neither of them be a trespasser upon the possession of the other, for the reason that the quarter section is open and uninclosed, and neither party interferes with the actual possession of the other. In such cases the settlement of the latter of the two may be *bona fide*, for many reasons."

In *Belk v. Meagher*, 104 U. S., 287, the court after approving the doctrine laid down in *Atherton v. Fowler* says,

"We also, all agree that, if a peaceable entry had been made on the lands which had not been enclosed. or improved, a good right might have been secured."

Judge Tripp then says,

"If then the settlement of the defendant Driscoll was. upon unoccupied portions of the land in controversy, the plaintiff would not have the right, by virtue of his. prior filing to oust him from such possession; nor would he have the right as prior pre-emptor, to oust this de- fendant from any portion of the land filed upon, except such as he, plaintiff, had actually settled upon and im- proved; and as the evidence does not show the defendant Driscoll, to have been in possession of any part of the premises which had been in the prior actual possession of the plaintiff, the verdict should have been set aside."

Then preliminary to a discussion of the jurisdiction, he says the plaintiff sought—

"To eject a junior pre-emptor from the entire claim because he (plaintiff) had a better right of pre-emption. Has a court of law any jurisdiction to determine such a right at all? And can it exercise such jurisdiction pend- ing or prior to the determination of such question by the land department?

"The power to sell and dispose of public lands is es- sentially of an administrative or executive character. Congress under its constitutional power to make all

needful rules and regulations respecting the territory and other property belonging to the United States, has placed this executive function in the hands of a special tribural, subject to the supervision of one of the executive officers, of the department."

Mr. Justice Miller in *Johnson v. Townsley*, supra, after laying down the general doctrine "that when the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its authority, is conclusive upon all others," holds that the land department is clothed with a special jurisdiction in the disposition of the public lands of the United States and declares that,

"This court has at all times been careful to guard itself against an invasion of the functions confided by law to the other departments of the general government; and in reference to the proceedings before the officers entrusted with the charge of selling public lands, it has frequently and firmly refused to interfere with them in the discharge of their duties, either by mandamus or injunction, so long as the title remained in the United States and the matter was rightfully before its officers for decision. On the other hand it has constantly asserted the right of the proper courts to inquire, after the title had passed from the government, and the question became one of private right, whether, according to the established rules of equity and the acts of congress concerning the public lands, the party holding that title should hold absolutely as his own, or as a trustee for another; and we are satisfied that the relations thus established between the courts and the land department are not only founded on a just view of the duties and powers of each, but are essential to the ends of justice, and to a sound administration of the law."

In *Shapley v· Cowan*, Field, J., says,

"The officers of the land department are specially designated by law to receive, consider and pass upon the proofs presented with respect to settlement upon the public lands with a view to secure rights of pre-emption."

In *Moore v. Robbins*, 96 U. S., 530, the court "limits the time when control over the land by the department ceases, to the act of issuing the patent."

In *Quinby v. Canlon*, re-examining the powers of the court to review the action of the land department, Judge Field adhered to and re-affirms the doctrine and then remarks,

"It would lead to endless litigation and be fruitful of evil, if a supervisory power was vested in the courts over the action of the numerous officers of the land department, on mere questions of fact presented for their determination. It is only when those officers have misconstrued the law applicable to the case as established before the department, and thus have denied the parties rights, which upon a correct construction, would have been conceded to them, or where misrepresentations or fraud have been practiced necessarily affecting their judgment, that the courts can in the proper proceeding, interfere and refuse to give effect to their action. On this subject we have repeatedly and with emphasis expressed our opinion, and the matter should be deemed settled," referring to *Johnson v. Townsley, Shepley v. Cowan, Moore v. Robbins*, supra.

And again in *Steel v. Smelting Co.*. 104 U. S., 647, he declares that,

"The land department, as we have repeatedly said, was established to supervise the various proceedings whereby a conveyance of title from the United States to portions of the public domain is obtained, and to see that the requirements of the different acts of congress are fully complied with. Necessarily therefore it must consider and pass upon the qualifications of the applicant, the acts he has performed to secure the title, the nature of the land, and whether it is of the class that is open to sale. Its judgment upon these matters is that of a special tribunal, and is unassailable except by direct proceedings for its annulment or limitation. Such has been the uniform language of this court in repeated decisions. 106 U. S., 451."

Here is a strong array of federal decisions announc-

ing the doctrine as to when the court will exercise jurisdiction over the decisions of the land department; the time when it will be, and the time when it will not be exercised. The courts have uniformly held that they will not exercise such jurisdiction while the matter is still *in fieri*, and prior to the time when the United States has parted with the title.

To declare the plaintiff out of court in this case is to give effect to the doctrine here laid down.

A contrary view of the law would bring this court into constant collision with the land offices in the territory. It would bring into our courts all the contested claims for title to the public lands under the homestead law, and would have the effect to transfer all contests from the local land offices to our courts and would leave the Register and Receiver mere ministerial officers with no more jurisdiction to try and determine a contest of adverse claimants than a mere clerk.

We have no doubt that the manifest intent of the laws of the United States was to invest in the land department exclusive jurisdiction of *all* questions relating to the sale and disposition of the public lands, up to the time of the issuing of the patent. While we do not wish to be understood as saying that this court, in a proper case, might not, or would not, grant relief on the prayer of a *bona fide* homesteader against a mere intruder or trespasser, we are of the opinion, that the court under the pleadings of this case, has no jurisdiction to eject the defendant.

The plaintiff's demurrer to the defendant's answers is therefore overruled.

The judgment of the district court is affirmed.

Judgment for defendants with costs.

The other Justices concur.