BARTLESVILLE VITRIFIED BRICK CO. v. BARKER.

No. 493. Opinion Filed May 10, 1910.

(109 Pac. 72.)

1.　INDIANS—Allotment—Contest—Injunction.　The Commissioner to the Five Civilized Tribes having decided a contest involving the right to allot a 10-acre tract of land in the Cherokee Nation in favor of the defendant in error, and an appeal having been taken therefrom, an injunction will not lie in her favor, during the pendency of such appeal, to oust from the possession thereof the plaintiff in error, claiming possession thereof under the contestant.

(Syllabus by the Court.)

*Error from District Court, Washington County; T. L. Brown, Judge.*

Action by Ollie T. Barker against the Bartlesville Vitrified Brick Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Veasy & Roland* and *Kenneth H. Davenport,* for plaintiff in error.—Citing: *Laughlin v. Fariss* (Okla.) 50 Pac. 254; *San Antonio, etc., Co. v. Bodenhamer, etc., Co.,* 133 Cal. 248; 1 High on Injunctions, § 4; Pomeroy on Equitable Remedies, § 264.

WILLIAMS, J. This appeal is prosecuted from an interlocutory order of the district court of Washington county, restraining the plaintiff in error from entering upon certain land therein described. The plaintiff's petition (defendant in error here) alleges that the plaintiff is in possession of a portion of said land, being the owner and entitled to the possession of all of the same. The undisputed facts appear to be as follows:

In the year 1902 one Frank Overlees, a claimant to citizenship by intermarriage, was in possession of the improvements upon 30 acres of land, including the 10 acres of land involved in this action, and the owner of the improvements thereon. Said Overlees placed said company in possessoin of said land, with the right to erect its plant thereupon, and under a contract to do everything in his power to vest the fee-simple title of said land in said company when the laws permitted such step to be taken. Said brick plant was constructed upon a portion of said 30 acres, and the 10 acres in controversy, which contained the shale bed, utilized by said company for the purpose of procuring shale for the manufacture of brick. This condition continued until about a year and a half or two years prior to the making of this affidavit, at which time it became apparent that claimants to citizenship in the Cherokee Nation by intermarriage would be denied enrollment. Accordingly, by several transfers, the possessory right to said 30-acre tract, including the land involved in this suit, and the ownership of the improvements thereon, were transferred to other citizens of the Cherokee Nation entitled to hold said possessory right and said improvements. Finally the possessory title to said land and the ownership of the improvements thereon by said series of conveyances became vested in L. C. Ross, administrator of the estate of John Ross, deceased, who caused said 10-acre tract to be fenced off from all of the other lands. About three years prior to September, 1908, Guy Barker, the husband of Ollie T. Barker, the defendant in error, was employed as an engineer by plaintiff in error. About a year after said employment said Barker was per-

mitted to move a small box house, costing about $45, upon said 10-acre tract. This was permitted because of the fact of said Barker's employment by said company, and at the same time several other employees had houses of the same character upon said land. The only purpose of said company in permitting the occupation of said land by said Barker was for his convenience, and for the purpose of enabling him to avoid the paying of excessive rents. It was the circumstance of said Barker's being permitted to move upon said land, with the consent and permission of said company, that enabled her to file on said land. A contest was immediately instituted against her by L. C. Ross, administrator of the estate of John Ross, deceased, who was the actual owner of the improvements upon the land in controversy, and in the possession thereof at the time of defendant in error's filing. Thereafter the heirs of said John Ross, deceased, executed a quitclaim deed, conveying said land to said company, which said deed is the basis of its title. The hearing of said contest was had before the Commissioner to the Five Civilized Tribes at Muskogee, Okla., and the initial decision by said Commissioner was in favor of defendant in error on the ground that the sale of the said land by the heirs of John Ross, before the decision of said contest case, amounted to an abandonment of said land by L. C. Ross, administrator of the estate of John Ross, deceased. Immediately L. C. Ross, administrator as aforesaid, filed a motion for a rehearing, on the ground that there was an error of law in so deciding said case; that an appeal had been prosecuted by L. C. Ross, administrator as aforesaid, from the decision of the Commissioner to the Five Civilized Tribes, which said appeal was undetermined at the time of this hearing; and that a further appeal lies therefrom to the Honorable Secretary of the Interior, until the final determination of said contest is had in that department of the government. Said plaintiff in error is solvent, a going concern, and competent to respond in damages in any amount for using shale from or trespassing upon said 10-acre tract for the manufacture of brick, pending the contest before the Department of the Interior.

Section 69 of an act styled "An act to provide for an allotment of the lands of the Cherokee Nation, for the disposition of townsites therein, and for other purposes" (Act July 1, 1902, c. 1375, 32 Stat. 716; Bledsoe's Indian Land Laws, § 69, at page 463), provides that, after the expiration of nine months after the date of the original selection of an allotment by or for any citizen of the Cherokee Tribe as provided in this act, no contest shall be instituted against such selection, and as early thereafter as practicable patent shall issue therefor; and contest having been instituted by virtue of this section, it necessarily follows that, as long as an appeal is pending from the decision of the Commissioner to the Five Civilized Tribes, the same is not finally determined.

In the case of *Tynon v. Hall et al.*, 22 Okla. 684, 98 Pac. 895, the court said:

"The defendant, Martha Hall, a Cherokee by blood, was claiming the lot by reason of her purchase from Eden, who was also a Cherokee citizen, and she had been in actual, peaceable possession of the same from the time she purchased it to the time the suit was brought, at least. She duly filed upon the lot before the Cherokee townsite commission, and the plaintiff filed a contest against her. What the outcome of the contest was does not appear from the record, but it will seem that under the showing made the court below was evidently of the opinion that the possession of the defendant, which was clearly adverse to the right of the plaintiff, ought not to be disturbed while the contest was pending before the townsite commission, a tribunal which had exclusive jurisdction over that class of litigation. It is not unusual for courts to entertain ejectment suits to sustain the possessory rights of a plaintiff against mere trespassers or intruders; but such relief is invariably refused as between adverse claimants to the public domain. We believe there is a similarity in principle between such case and the case at bar."

In *Adams v. Couch et al.*, 1 Okla. 17, 26 Pac. 1009, the third paragraph of the syllabus reads as follows:

"The Land Department of the government will not be interfered with by the courts while it has charge of any contest proceedings between adverse claimants of the land."

In the opinion the court said:

"We have no doubt that the manifest intent of the laws of the United States was to invest in the Land Department exclusive jurisdiction of all questions relating to the sale and disposition of the public lands, up to the time of the issuance of the patent. While we do not wish to be understood as saying that this court, in a proper case, might not, or would not, grant relief on the prayer of a *bona fide* homesteader against a mere intruder or trespasser, we are of the opinion that the court, under the pleadings in this case, had no jurisdiction to eject the defendants."

It appears that neither the certificate of allotment nor patent had been issued to the defendant in error. If an ejectment suit could not be maintained against a party in possession claiming title as long as a contest to such land was pending and undetermined before the Land Department, can the powers of equity be invoked by mandatory injunction to place the plaintiff in error out of possession and the defendant in error in possession pending such contest? This question seems to have been, in effect, determined adversely to the defendant in error, not only by the Supreme Court of Oklahoma Territory, but also by the Supreme Court of the United States. *Laughlin v. Fariss,* 7 Okla. 1, 50 Pac. 254; *Black v. Jackson,* 177 U. S. 349, 20 Sup. Ct. 648, 44 L. Ed. 801. It is not to be understood, however, that under a proper case, where a trespass and waste is being made, and the trespasser appears to be insolvent, the powers of equity may not be invoked to restrain such waste and trespass pending the final determination of the contest.

The attorneys for the defendant in error have neither appeared in this court to make any oral argument, nor filed or attempted to file any brief to sustain the order of the lower court. In the case of *Ellis et al. v. Outler et al.,* 25 Okla. 469, 106 Pac. 957, in an opinion concurred in by a majority of this court, it is said:

"Counsel for defendants in error filed no brief in this case, and have given no reason for their failure to do so, although the brief of counsel for plaintiffs in error was prepared, printed, and duly served upon them. Under these circumstances this court is not required to look to the record to ascertain upon what possible theory the judgment of the trial court might be sustained but will

exercise the option given it under rule 7 (20 Okla. viii, 95 Pac. vi)."

See, also, *Reeves & Co. v. Brennan,* 25 Okla. 544, 106 Pac. 959; *Butler et al. v. McSpadden,* 25 Okla. 465, 107 Pac. 170; *Sharpleigh Hardware Co. v. Pritchard,* 25 Okla. 808, 108 Pac. 360. Following the authority of these cases, we would be justified in reversing this case, without searching the record, when the brief of plaintiff in error makes a *prima facie* showing of error in the action of the trial court.

In the case of *Leavitt et al. v. Com. Nat. Bank, infra,* 109 Pac. 71, it is said:

"If plaintiff in error is unable to undergo the expense of filing a printed brief under rule 5, a motion containing a statement of the facts, by being served on the opposite side, could be mailed to the clerk of this court, and would be considered by it after the expiration of 10 days for reply thereto, without any necessity of any appearance of counsel here, and if it appeared that the alleged aggrieved party was unable to have a brief printed and there was probable ground that he had a meritorious cause, this court would permit him to file typewritten briefs."

This statement was made when the plaintiff in error had defaulted in the preparing, serving, and filing of a brief as required by the rule.

As to the defendant in error, when the presumption is in favor of the correctness of the judgment of the lower court, if she were unable to undergo the expense of filing a printed brief under said rule, by the same inexpensive and simple procedure her counsel would have been permitted to file typewritten briefs in support of the order of the lower court. Nothing of this kind has been done or attempted. However, we have carefully examined the record with a view of determining whether the order of the lower court should be sustained and our conclusion is that it was erroneous.

The judgment of the lower court is accordingly reversed and remanded, with instructions to proceed in accordance with this opinion.

All the Justices concur.