## FRANKLIN v. SOVEREIGN CAMP W. O. W.

No. 18866. Opinion Filed April 29, 1930.

Rehearing Denied Oct. 7, 1930.

William M. Franklin, in pro. per.

Ledbetter, Stuart, Bell & Ledbetter, for defendant in error.

CULLISON, J. This is an appeal from the district court of Oklahoma county., Okla., wherein plaintiff in error (plaintiff below), William M. Franklin, brought an action against the defendant in error (defendant below). Sovereign Camp of the Woodmen of the World, to recover from said defendant certain money alleged to have been expended by said Franklin in going to and returning from a meeting of said association or society held in San Antonio, Tex., in July, 1923, and which it is alleged the defendant is legally bound to pay to said Franklin, but refuses to do so.

The parties to this appeal will be referred to as they appeared in the trial court: William M. Franklin, plaintiff, and Sovereign Camp of the Woodmen of the World, "defendant society."

Defendant society in the trial court demurred to the petition and amended petition of plaintiff, which demurrers were by the trial court sustained, and from the order of the trial court sustaining said demurrers, plaintiff appeals to this court.

The facts in this case, as alleged and set forth in the petition and amended petition of plaintiff, are substantially as follows:

Plaintiff became a member of the defendant society sometime in the year 1903, and at said time there was issued to plaintiff a certificate of insurance in said defendant society for $1,000; thereafter, to wit, September 17, 1913, in lieu of the prior certificate, a certificate of insurance for $3,000 was issued and delivered to plaintiff. The plaintiff has at all times since the issuance and delivery of said certificates of insurance paid all dues and assessments against him as a member of said society and as a policy holder of the certificates of insurance issued by said defendant society.

The business affairs of the defendant society are conducted through several divisions and subdivisions thereof, designated "camps," "head camps" and the "sovereign camp." Camps elect delegates to head camps, and make recommendations in regard to the management of the defendant society and certificates of insurance issued to members. Head camps, in turn, elect delegates to the sovereign camps, and they, in turn, make recommendations as to the management and business policy of said defendant society. The sovereign camp. however, is the supreme governing body of the defendant society.

Plaintiff herein was duly elected a delegate from the Oklahoma head camp to the sovereign camp meeting, which met in New York City, July 12, 1921, and while seated therein, a report of a committee appointed by the sovereign commander of said defendant society was adopted by said convention, expelling plaintiff from certain fraternal rights in said society.

The petition of plaintiff discloses that the committee on grievances, trials, and appeals of the defendant submitted its report to the society, which report showed that the committee had investigated charges against several members of the society, including plaintiff, and said committee recommended that the several members, including this plaintiff, be expelled from membership in the sovereign camp, and that they be not permitted to sit in a meeting of a camp, or be a delegate or officer in a head camp or in the sovereign camp for a period of 10 years from 1921. Said report further provided that the several members therein expelled, including plaintiff, might maintain their benefit insurance certificates by payment of dues.

Plaintiff's petition further discloses that the Legislature of the state of Oklahoma passed an act, being Senate Bill No. 264 (chapter 94, p. 160, S. L. 1923), approved April 9, 1923, prescribing certain conditions precedent to fraternal beneficiary associations doing business in the state of Oklahoma, and under which act the Insurance Commissioner of Oklahoma was authorized to hear complaints against alleged oppressions and abuses against members of such societies and to correct such abuses.

On April 19, 1923, plaintiff filed his complaint with the Insurance Commissioner of Oklahoma, under the act of the Legislature, supra. setting out the facts and circumstances surrounding his expulsion from the defendant society at the time of the meeting of said society in New York City, July 12. 1921, and, as a result of such hearing, the Insurance Commissioner of Oklahoma, on June 5, 1923, held that under the provisions of

Senate Bill No. 264, supra, the plaintiff should be reinstated and restored to full fraternal relationship in said society and permitted to enjoy the rights and privileges other members enjoy, and ordered the sovereign camp of the defendant society to comply with said order and holding on or before June 28, 1923, or cease to do business in the state of Oklahoma, in so far as procuring new members.

The defendant society in communication with the Insurance Commissioner refused to comply with said order, denying the authority of the Commissioner to make same.

Thereafter, plaintiff, relying on the holding and order of the Insurance Commissioner, wrote the defendant society requesting an indentification blank to enable plaintiff to purchase a ticket to the special sovereign camp meeting to be held in San Antonio, Tex., July 2, 1923, which blank would entitle plaintiff to special train fares, and other benefits. The defendant society, however, refused to honor plaintiff's request and advised plaintiff that he was not to be a delegate to said convention at San Antonio.

Plaintiff, however, did attend said convention at San Antonio, Tex., July 2, 1923; presented himself at said meeting, but was denied a seat therein and was also denied the pay that other delegates from Oklahoma City attending said meeting received.

Thereafter, plaintiff brought this action in the district court of Oklahoma county, Okla., against defendant society for $412.20, the amount claimed by plaintiff to have been paid delegates from Oklahoma City who attended the special meeting of the sovereign camp of defendant society at San Antonio, Texas, July 2, 1923. No other claim for financial damages was made.

When the case came on for hearing in the trial court, the defendant society filed general demurrers to plaintiff's petition and amended petition, which demurrers were by the trial court sustained, and from the order of the trial court sustaining said demurrers, plaintiff comes on appeal to this court.

Under the view that we take of this case, it is necessary only to consider the questions of law raised by defendant's demurrers, and assigned by plaintiff as error. Plaintiff contends:

First: That he is entitled to recover under the provisions of Senate Bill No. 264, supra.

Second: That independent of the provisions of Senate Bill No. 264, he is entitled to recover in the amount prayed for.

It is a well-settled rule of law in this jurisdiction that a demurrer to a petition admits the truth of the allegations therein contained and all reasonable inferences to be deducted therefrom. Brown v. Gorman, 7 Ind. Ter. 749, 104 S. W. 1165; Adams v. Couch, 1 Okla. 17, 26 Pac. 1009; Tecumseh St. Bk. v. Maddox, 4 Okla. 583, 46 Pac. 563; Oklahoma Sash & Door Co. v. Amer. Bonding Co., 67 Okla. 244, 170 Pac. 511.

It, therefore, follows that, for the purposes of determining whether the trial court erred in sustaining said demurrers, we must accept as true the facts well pleaded in the plaintiff's petition and amended petition.

First: Do the allegations of plaintiff's petition state a cause of action remedial under the provisions of Senate Bill No. 264, supra?

The record establishes beyond question that the basis of plaintiff's claim against the defendant society is the action of said society at the sovereign camp meeting held in New York City, in July, 1921, at which time plaintiff, together with others, was expelled from said society for a period of ten years, or until July, 1931.

The act of the Legislature (Senate Bill No. 264) under which plaintiff claims his petition states a cause of action and entitles him to relief, was approved by the Governor of Oklahoma, April 9, 1923, and thereafter became a part of the statutory law of this state.

It, therefore, follows from plaintiff's petition that his cause of action, if any, against the defendant society arose prior to the passage and approval of Senate Bill No. 264, under which he seeks relief, and that plaintiff's petition, therefore, does not state a cause of action in favor of plaintiff and against the defendant society, or entitle plaintiff to any relief by virtue of Senate Bill No. 264, unless it clearly appears that the Legislature intended that said act should be, and is, in fact, retroactive in its operation.

To determine whether or not the Legislature intended said act to be retroactive we must look to the language of the act itself.

The caption of said act (Senate Bill No. 264, supra) provides:

"An Act to protect members of foreign fraternal beneficiary societies or associations who reside in this state, to give the State Insurance Commissioner power and authority to prescribe rules and conditions precedent or under which such societies or associations can do business in this state; providing penal-

ties for violations of this act, and declaring an emergency."

Certainly, there is nothing in the language of the caption indicating any intention on the part of the Legislature that the act should be retroactive in operation.

Section 1 of said act provides:

"In addition to the regulations prescribed in article IV of chapter 51 of the Compiled Statutes of Oklahoma, 1921, as a condition precedent and under which foreign fraternal beneficiary associations can do business in this state, such associations shall have a representative form of government and in their dealings with the members thereof shall be equitable and just, and the Insurance Commissioner of the state of Oklahoma is hereby given the power and authority to prescribe such rules and regulations as will make effective the purposes and intent of this act, and especially in the following particulars, to wit: * * *"

The first subdivision of said act provides:

"No member in this state of such society or association shall be transferred from one lodge, camp, or grove, or by whatever name the subordinate body may be designated, to another lodge, camp, or grove, or transferred to a subordinate lodge or body outside of the state, without the consent of the person so transferred, and if any member has been so transferred, the Insurance Commissioner may require that such member be transferred back to the lodge, camp, grove, or other body from which they were transferred. * * *"

The second subdivision of said act provides:

"No member of such society or association in this state shall be suspended or expelled * * * unless* * *after a fair and impartial hearing, are found guilty * * * provided further that if said Commissioner is satisfied, upon such proof as he may require, that any member in this state has been suspended or expelled * * * without a just cause * * * he may make an order that such member be reinstated. * * *" (Emphasis ours.)

The third subdivision of said act provides:

"No officer * * * shall have the right * * * to * * * expel a member * * * in this state, for or on account of any proper criticism of the management of such society * * * and * * * if the said Insurance Commissioner* * * after complaint is made and hearing is had, is satisfied * * * that an injustice has been done such member * * * he may make an order for the reinstatement of such member. * * *"

There is a presumption, recognized by the great weight of authority in this country, that statutes are intended to operate prospectively only, and words ought not to have a retrospective operation unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied. (25 R. C. L. 788.)

This court recognizes and adheres to the above rule, and in Adair v. McFarlin, 28 Okla. 633, 115 Pac. 787, said:

"Laws are generally construed as applicable to future conditions, and are not to be allowed a retroactive effect unless such intention upon the part of the Legislature is so clearly expressed that no other construction can be fairly given."

Tested by the above rule, can it be said that the act above is retroactive legislation?

The expressions used in said act, namely, "No member * * * shall be transferred * * *" "No member * * *shall be suspended or expelled * * *" "No officer * * * shall have the right * * * to expel a member * * *" all clearly indicate an intention to create an inhibition against such action or actions to apply only to cases arising in the future or subsequent to the passage of the act.

The only language used in said act, above, in anywise tending to sustain the contention that the Legislature intended such act to have a retroactive operation are the expressions, "* * *if any member has been so transferred"; "* * *if any member has been suspended* * *"; "* * *if any injustice has been done, * * *" etc.

Can it be said that these words ("has been") indicate a legislative intent that they shall have a retroactive operation; that they are so clear, strong, and imperative that no other meaning can be annexed to them? We think not.

Entertaining a most liberal view, we are of opinion the words "has been," as used in this act, refer to any member expelled, suspended, etc., prior to the filing of a complaint before the Insurance Commissioner, and the Insurance Commissioner's action thereon, and subsequent to the passage and approval of said act.

The words "has been," as used in the above act, may, conceivably, apply to two different classes of cases: (1) A member who has been expelled, etc., prior to the filing of a complaint before the Insurance Commissioner, and subsequent to the date of the passage and approval of said act; and (2) a member who has been expelled prior to the filing of a complaint before the Insurance Commissioner and also prior to the date of the passage and approval of said act.

Obviously, the first class is within the

purview of the act; but the second class is not, unless we give the statute a retroactive operation, which courts are loath to do. If it was the intention of the Legislature (and we think it was) to have the act apply only to cases arising on or subsequent to the date of the passage and approval of said act, the language used is quite sufficient to express such intention.

Every reasonable doubt is to be construed and resolved against a retroactive operation of a statute. Ducey v. Patterson, 37 Colo. 216, 86 Pac. 109.

In Good v. Keel, 29 Okla. 325, 116 Pac. 777, Mr. Justice Kane, speaking for this court, said:

"Statutes are to be construed as having a prospective operation unless the purpose and intention of the Legislature to give them a retrospective effect is expressly declared or . is necessarily implied from the language used. In every case of doubt the doubt must be resolved against the retrospective effect."

In Rhodes v. Cannon (Ark.) 164 S. W. 752, the Supreme Court of Arkansas quotes with approval the language of Judge Duer (Berley v. Rampacher, 12 N. Y. Sup. Ct. 183) as follows:

"Although the words of the statute are so general and broad as, in their literal extent, to comprehend existing cases, they must yet be construed as applicable only to such as may thereafter arise, unless the intention to embrace all is plainly and unequivocally expressed."

And we find this same language quoted with approval by the Supreme Court of Kansas in Douglas County v. Woodward (Kan.) 84 Pac. 1028.

Can it be said that the words and language used in Senate Bill No. 264, supra, indicate a legislative intent that they shall have a retroactive operation; that they are so clear, so strong and imperative, that no other meaning can reasonably be attributed to them? We think not.

In fact plaintiff, in his reply brief, page 36, concedes that to his mind said act is not retroactive, wherein he says:

"It is admitted by counsel for the parties to this action that the act in question is not retroactive in its operation."

We are of opinion, and so hold, that Senate Bill No. 264, approved April 9, 1923, is not retroactive, and the plaintiff's petition, seeking relief the basis of which was the action of the sovereign camp meeting held in New York City, in July, 1921, states no cause of action under said act, and the demurrers to plaintiff's petition were correctly sustained by the lower court.

Plaintiff's second contention is "that, independent of the provisions of Senate Bill No. 264, his petition states a cause of action, and entitles him to relief against the defendant."

As heretofore stated, plaintiff, together with others, was expelled by said defendant society at the sovereign camp meeting held in New York City, July 12, 1921, for a period of 10 years from said date, and said order of expulsion provided, further, that the members so expelled, including plaintiff, should not be permitted to sit in a meeting of a camp, or be a delegate or officer in a head camp, or in the sovereign camp, during said period of expulsion.

It is important to note that said order of expulsion provided that the several members expelled, including plaintiff, might maintain their benefit insurance certificates with defendant society by payment of dues thereon. (Record, p. 14.)

Section 2 of the constitution and by-laws of said defendant society, enacted in July, 1919, and effective December 31, 1919 (attached to plaintiff's petition, marked Exhibit "X"), provides:

"The sovereign camp shall have original and appellate jurisdiction in all matters pertaining to the general welfare of this society. It may entertain and determine charges against any of its members and all other matters of controversy which may be brought to it on appeals from camps, head camps and the sovereign executive council, and its decision shall be final. * * *"

"It shall have power to prescribe the rights, privileges, duties and responsibilities of itself, its camps and head camps, and the membership of this society, and to finally determine the same. * * *"

"It shall be the sole judge of the election and qualification of its own officers and members and shall establish rules for their government and may, by itself, or through its sovereign executive counsel, suspend or remove any officer or member for cause." (Emphasis ours.)

The above provisions of the constitution and by-laws of the defendant society clearly provide that the defendant society may, by itself, or through its sovereign executive counsel, suspend or remove any officer or member for cause, and that it shall be the sole judge of the election and qualifications of its own officers and members and shall establish rules for their government. and that the sovereign camp shall also have original jurisdiction in such matters.

Plaintiff's petition discloses that at the

sovereign camp meeting held in New York City in July, 1921, the committee on grievances, trials, and appeals of defendant society made a report showing that said committee had investigated charges against said plaintiff and others and said committee recommended that plaintiff and the others be expelled from membership in said sovereign camp and from all fraternal relations and should not be allowed to sit in a meeting of a camp or be a delegate or officer in a head camp or sovereign camp for a period of 10 years from 1921.

Under the provisions of section 2 of the constitution and by-laws of the defendant society, above, it is clear that the action of the sovereign camp at New York in 1921 in expelling plaintiff was in accordance with the power of removal and expulsion granted said society by said constitution, and since said order of expulsion permitted plaintiff to continue in force his insurance certificates with said defendant society so long as dues are paid, the order of expulsion does not affect the property rights of the plaintiff, and, therefore, the court below had no jurisdiction to determine said controversy between plaintiff and defendant involving purely fraternal rights and benefits in said society, and the petition of plaintiff is also demurrable on this ground.

In National Grand Lodge v. United Bros., 36 Okla. 738, 129 Pac. 724, this court held:

"In controversies between individual members of a secret fraternal organization, where civil or property rights, rights as citizens, as contradistinguished from purely fraternal rights, are involved, the civil law is superior to the constitution and by-laws of such order, and the civil courts have jurisdiction to determine such controversies; but where the rights involved are purely fraternal rights, created under, limited, defined and determined by the constitution and by-laws of such order, the civil courts have no jurisdiction."

In the body of the opinion (National Grand Lodge v. United Bros., supra) the court said:

"It is not shown by the record in the case at bar that any civil or property rights have been infringed upon, and while the law of the land is superior to the laws of any fraternal organization so far as civil rights are involved, and are so recognized by the constitution and by-laws of both plaintiff and defendant herein and are also in their pleadings, yet the civil courts have been very cautious in assuming jurisdiction over controversies arising between individual members of such organization over purely fraternal rights, which of necessity must be determined by the laws of the organization."

Citing in support thereof: Watson v.

Jones, 13 Wall. 679, 20 L. Ed. 666; Harmon v. Dreher, Speers, Eq. 87; Den v. Bolton, 12 N. J. L. 206; Ferraria v. Vasconcelles, 23 Ill. 456; State ex rel. Watson v. Farris, 45 Mo. 183.

Plaintiff's petition does not disclose wherein his civil rights as a citizen, as distinguished from purely fraternal rights as a member of the society, are involved.

The amended petition of plaintiff failing to state a cause of action in favor of plaintiff and against defendant society, under Senate Bill No. 264, supra, or independent of said act, the trial court correctly ruled in sustaining said demurrers.

Where a petition neither states a cause of action in equity or law, a demurrer thereto should be sustained. Kimmell v. Powers, 19 Okla. 339, 91 Pac. 687.

The order of the trial court sustaining defendant's demurrers to plaintiff's petition and amended petition is hereby affirmed.

MASON, C. J., and HUNT, RILEY, SWINDALL, and ANDREWS, JJ., concur. LESTER, V. C. J., and CLARK and HEFNER, JJ., not participating.

Note.—See under (1) 21 R. C. L. p. 507; R. C. L. Perm. Supp. p. 5066. (2) 25 R. C. L. p. 788; R. C. L. Perm. Supp. 5609. See "Beneficial Associations," 7 C. J. § 2, p. 1058, n. 31; § 80 p. 1116, n. 54 p. 1117, n. 63; "Pleading," 49 C. J. § 543, p. 434, n. 59; § 544, p. 436, n. 68. "Statutes," 36 Cyc. p. 1205, n. 13.