## BRADFORD GLYCERINE CO. v. KIZER.

(Circuit Court of Appeals, Sixth Circuit. February 12, 1902.)

No. 1,024.

1. EVIDENCE—OPINION—QUALIFICATION OF EXPERT.
    A professor of chemistry, otherwise qualified as an expert, is not disqualified from giving his opinion as to the cause of an explosion of nitroglycerine, in answer to a hypothetical question, by the fact that he has had no practical experience in its manufacture.

2. SAME—SUBJECTS OF EXPERT TESTIMONY—MATTERS IN ISSUE.
    Whether a plaintiff was guilty of contributory negligence, under the facts shown by the evidence, is a question for the jury, and a witness

cannot properly be permitted to express his opinion thereon in answer to a hypothetical question.

3. SAME—COMPETENCY OF EXPERT—DISCRETION OF COURT.

Whether a witness is qualified to testify to a matter of opinion is a preliminary question, the determination of which rests largely in the discretion of the trial judge, and his decision is conclusive, unless clearly shown to be erroneous in matter of law. .

4. APPEAL—REVIEW—EXCEPTIONS.

A charge to which no exception was taken at the time cannot be reviewed on a writ of error.

5. MASTER AND SERVANT—ACTION FOR INJURY TO SERVANT—FACTS RAISING PRESUMPTION OF NEGLIGENCE.

Where, in an action by a servant against the master to recover for an injury caused by an explosion of nitroglycerine, manufactured by defendant, it was an undisputed fact that the nitroglycerine exploded spontaneously, and there was evidence tending to show that if pure and properly made it would not so explode, but that it would if impure, it was not error to charge that, if the jury found such to be the fact, then a presumption of impurity arose from the fact of the explosion.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

The defendant in error, plaintiff below, hereafter called the plaintiff, brought this action against the plaintiff in error, defendant below, hereafter called the defendant, to recover damages sustained on account of an accident caused by the explosion of nitroglycerine. The defendant was engaged in manufacturing and exploding nitroglycerine in oil and gas wells. The plaintiff, for some time before and at the time of the accident, was at work for the defendant as an oil-well shooter. It was his duty to haul the nitroglycerine from the magazine of the defendant, where it was stored, to oil and gas wells, place it in tin shells, lower it to the bottom of the well, and there explode it by dropping a heavy weight upon it. It is necessary that such nitroglycerine should be properly manufactured, and the materials composing it should be in proper proportions, and the nitroglycerine thoroughly washed in order to prevent spontaneous combustion. The plaintiff, at the time of the accident, had removed from the wagon in which he had brought it to the well the nitroglycerine, which was contained in cans. He had put a part of it into the tin shells, which he had lowered into the well, and the cans from which this nitroglycerine had been taken were returned to the wagon. While preparing to uncork another can in the derrick he heard a hissing sound in the wagon, and, glancing up, saw a blaze coming from one of the empty cans, and ran out of the derrick just as an explosion took place, which threw him down, injuring him about the head and body, where he was struck by pieces from the exploding cans. The negligence averred is furnishing nitroglycerine which had been improperly manufactured by the defendant, and was therefore likely to explode when handled in the usual way. The defendant claimed that the plaintiff was guilty of contributory negligence in using leaky cans and allowing his wagon to become saturated with the fluid. There was evidence that impure nitroglycerine would explode spontaneously, but that pure nitroglycerine would not so explode, and four witnesses were asked the following question by plaintiff's counsel: "Supposing a nitroglycerine shooter had brought in his wagon to an oil well a number of cans of nitroglycerine, and after having emptied the nitroglycerine therefrom in the month of August, and after said cans had been so opened and emptied, and were replaced in the wagon, and without coming in contact with any substance whatever, except the air, a blaze is generated, and appears upon and issuing from said cans, and the can explodes; to what, in your opinion, based upon your knowledge and experience, as above stated by you, would said blaze and explosion be attributed?" Allowing this question to be answered is alleged as error. The defendant placed a witness on the stand, and asked him whether, in his opinion, it was ordinary care and prudence in that business for a shooter, when the

sun was shining, to allow his wagon, in the condition it was usually in, to stand open when he had taken out the cans, and whether, in his opinion, it would be likely to cause the substance inside to take fire. The answers to these questions were excluded on the ground that the witness was not shown to be qualified to answer them, and the court's ruling in that regard is alleged as error. Exceptions were also taken to the charge of the court to the jury, which rendered a verdict for the plaintiff, and the judgment is brought here for review on writ of error.

G. Harmon, for plaintiff in error.

B. F. James, for defendant in error.

Before LURTON and DAY, Circuit Judges, and WANTY, District Judge.

WANTY, District Judge, after making the foregoing statement of the case, delivered the opinion of the court.

1. The assignments of error relating to the testimony of the four expert witnesses for plaintiff, except that of the witness Young, cannot be considered, as no objection was made on the trial to the testimony of two of them, and to one there was only a general objection, without giving any reason for it. The objection to the answer of the witness Young to this hypothetical question was "that the witness had not been shown to have any practical knowledge of the question." This witness, sworn as an expert, was at the time of giving his testimony, and for the preceding fourteen years had been, filling the chair of advanced chemistry in the Ohio Normal University. He showed that he had studied the subject of nitroglycerine, gave the formula by which it was manufactured, and his testimony agreed with that of the manufacturers and the other chemists, to whose testimony no objection was made. He qualified as an expert, the question asked him was a hypothetical one, and his lack of practical experience was no ground for its exclusion. Bierce v. Stocking, 11 Gray, 174; 12 Am. & Eng. Enc. Law, 433.

2. The question propounded to the witness Smith, asking whether, in his opinion, it was ordinary care and prudence in that business for a shooter, when the sun was shining, to allow his wagon, in the condition it was usually in, to stand open, when he had taken out the cans, was properly excluded, as it called for the determination of an issue which was for the jury. If he had been qualified, he could have sworn to the chemical action of the sun's rays on the nitroglycerine in the wagon, but it would not be for him to say whether such exposure was negligence, as that was an inference to be drawn from the circumstances proven. Motey v. Granite Co., 20 C. C. A. 366, 74 Fed. 155–159, and cases there cited. The other question was properly excluded on the ground that the witness was not shown to be qualified to answer it. He was a well-shooter, and had had considerable experience, but it was not shown that he had peculiar knowledge of any chemical action that might be produced by the sun's rays upon the substance in the wagon. It was urged that his long experience in handling nitroglycerine and assisting in its manufacture qualified him to express an opinion, but such qualification is a question for the trial judge, and its determination is very largely in his discretion. Mr. Justice Gray, in Manufacturing Co. v. Phelps, 130 U. S. 520–527, 9 Sup. Ct. 601, 603, 32 L. Ed.

1035, thus tersely states the rule: "Whether a witness called to testify to any matter of opinion has such qualifications and knowledge as to make his testimony admissible is a preliminary question for the judge presiding at the trial, and his decision of it is conclusive, unless clearly shown to be erroneous in matter of law. Perkins v. Stickney, 132 Mass. 217, and cases cited; Sorg v. Congregation, 63 Pa. 156." See, also, Spring Co. v. Edgar, 99 U. S. 645-658, 25 L. Ed. 487, and cases cited.

3. The defendant complains here of the charge of the court on the question of contributory negligence, but the charge given accords substantially with the request made by the defendant, and correctly stated the law; but if it had not been requested, and had not correctly stated the law, no exception having been taken at the time, it could not be reviewed here.

4. There was no proof on the subject of how the nitroglycerine in question in this case was made. A number of witnesses swore that pure nitroglycerine will not explode spontaneously, and that impure nitroglycerine will so explode. The court charged the jury that if they believed from the evidence that pure nitroglycerine would not explode spontaneously, and that this nitroglycerine did so explode, they could take the fact of the explosion into consideration in determining the question as to the purity of the nitroglycerine; but that in considering that question, if they found that pure nitroglycerine would explode as well as impure nitroglycerine, the fact of the explosion could not be considered as bearing upon the question of purity, which instruction was immediately followed by the instruction complained of, which is:

"When there is, as in this case, an explosion of this nitroglycerine, there is a presumption arises that it was from some inherent defect, something in the character of the nitroglycerine itself, due to surplus acid or some other cause, that made it explode, without the intervention of any other agency. Now, that being the presumption, unless that is explained by the evidence, you are warranted in coming to the conclusion that the defendant furnished the plaintiff with impure nitroglycerine, and in that departed from his duty as an employer."

When the jury returned for further instructions this part of the charge was practically repeated, and the defendant complains that after the fact of the explosion, which was admitted, appeared in the case, it erroneously placed upon him the burden of proving that he was free from negligence. Under the evidence in this case, there could be no claim that the cause of the accident could not be accounted for.

It was accounted for if nitroglycerine, when properly manufactured, could not explode spontaneously, and this nitroglycerine did so explode. The jury were compelled to find the other necessary facts before they could infer negligence from the explosion. When that prima facie case was made, the burden of rebutting it was upon the defendant. The case does not come within the rule that the fact of accident carries with it no presumption of negligence on the part of the employer, laid down in Railroad Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136, and Patton v. Railway Co., 179 U. S. 658, 663, 21 Sup. Ct. 275, 45 L. Ed. 361, nor within the cases in the state courts referred to in defendant's brief. Under the facts in this case, negligence in the

manufacture of the nitroglycerine would be presumed in the absence of evidence showing care in the manufacture of it, as the explosion raises a presumption of negligence, if there is no explanation of the real cause for such explosion. Judson v. Powder Co., 107 Cal. 549, 40 Pac. 1020, 29 L. R. A. 718, 48 Am. St. Rep. 146, and the note to the same case in 29 L. R. A. 718; Schoepper v. Chemical Co., 113 Mich. 582, 71 N. W. 1081.

We find no error, and the judgment is affirmed.