CYRUS KIMMELL V. OLIVER POWERS, *Executor, et al.*

(Filed September 5, 1907.)

(91 Pac. 687.)

1. **PRINCIPAL AND AGENT—Relationship—Case.** A contract, whereby the owner of an addition to a town gives to another the management and exclusive sale of the same for a period of ten years, and agrees to pay to such person twenty-five per cent. of the proceeds of sales, after deducting the current expense, and also agrees that, if any part of the addition remains unsold at the end of that time, it shall be appraised and the owner to have three-fourths thereof and the other party one-fourth, constitutes the relation of principal and agent, and does not vest the agent with any interest in the real estate itself.

2. **SAME—Termination of Agency—Death of Party.** Where the relation of principal and agent exists, the death of either party terminates the agency, except where the agent has a pecuniary interest of his own in the execution of the agency.

3. **PLEADING—Petition—Demurrer.** Where a petition neither states a cause of action in equity or at law, a demurrer thereto should be sustained.

*Error from the District Court of Comanche County; before Frank E. Gillette, Trial Judge.*

Affirmed.

*Black & Trosper,* for plaintiff in error.

*Stevens & Myers* and *Hudson & Keys,* for defendants in error.

Opinion of the court by

BURWELL, J.: James R. Woods was the owner of a valuable claim adjoining the city of Lawton, which was afterwards platted and known as Woods' Addition to that city. On March 5, 1902, Mr. Woods died, and the legal title to this land became vested in his wife, who was a daughter of the plaintiff. After the death of James R. Woods, the plaintff, on October 17, 1902, entered into a written contract with his daughter, Alta M. Woods, whereby it was agreed that the plaintiff should have charge of the selling and

management of this addition, as well as the management of investments to be made with Mrs. Woods' money. The contract is as follows:

"This contract made and entered into this 17th day of October, 1902, by and between Alta M. Woods, of Lawton, Oklahoma, or Norton, Kansas, party of the first part, and Cyrus Kimmell, of El Reno, party of the second part.

"Witnesseth: That said party of the second part does hereby covenant with the party of the first part, her heirs, executors, and assigns to take charge of all the business interests of the party of the first part in Lawton, Oklahoma, and elsewhere consisting of the sale of lots, blocks, adjusting legal difficulties, railway right of way case, and all matters pertaining to the Woods Addition whatsoever.

"That the party of the second part shall have control of the sale of the Woods Addition in Lawton, Oklahoma, for a period of ten years hereof, and shall receive for such services twenty-five (25) per cent. of the proceeds of such sales after deducting current expenses of the same, such division to be made on or about the first day of January of each year during the term of this contract and before investing the proceeds of the sales and other income for the previous year, provided however, that the party of the second part shall not receive a per cent. of the settlement for the right of way through said addition which may be granted to the Oklahoma City and Western Railway Company and that the party of the second part shall have full control of each investment for a period of ten years from date of each investment but in all matters of investment whenever practical before investing said money, is to counsel with the party of the first part regarding such investment; that he shall seek according to his best judgment safe and conservative investments for all moneys received from the above described real estate and belonging to the party of the first part after deducting all current expenses for the year; that such investment shall be made in the name of Alta M. Woods, party of the first part; that he is to receive all money derived from the sale of the Woods Addition and deposit the same in the banks of El Reno and Lawton, in the name of the party of the first part.

"That the party of the second part shall receive for the management of such investments belonging to the party of the first part thirty-seven and one-half per cent. of the net profits of all such

investments after deducting all expenses of said business; that on or about the first day of January of each year during the term of this contract the books of the business for the previous year shall be closed and dividends declared and divided between the parties according to this contract; that if the profits upon said investment belonging to the party of the first part are reinvested that such money reinvested is to be managed on the same terms as the original investment.

"And it is agreed further that if at the expiration of ten years from this date either party may wish to sever their business relations, and terminate this contract, that all the property of the Woods Addition remaining unsold shall be appraised by three competent, disinterested parties and that such value shall be a fair cash valuation and it shall be divided between the parties hereto, the first party receiving seventy-five per cent., and the second party twenty-five per cent. of all such unsold property either in lots, stock, notes, mortgages or cash as they may agree, provided, however, that should the parties hereto arrive at a valuation of such unsold property without the intervention of outside parties, a settlement may be made and the appraisement waived.

"It is provided that in the event of the death of the party of the first part this contract is to remain and be in full force and effect, with and against the heirs, executors and legal assigns of the first party.

"That in the event of the death of the party of the second part, there shall be due his estate that portion of twenty-five per cent. of the unsold property which shall correspond to the per cent. of years of this contract which shall have then elapsed."

Subsequently, Mrs. Woods married one Oliver Powers, and on September 26, 1903, Mrs. Powers (formerly Mrs. Woods, but to whom we shall hereafter refer as Mrs. Powers) died.

The plaintiff commenced this action to compel specific performance of the contract by the executor and the heirs of Mrs. Powers. A demurrer was filed to the first count of the petition and sustained thereto, and this ruling is the only matter involved in this appeal.

The petition is quite long, and it would subserve no useful purpose to copy it in full. We shall only refer to those parts that are

vital to a determination of the question involved. In the first place, what is the effect of the contract between the plaintiff and Mrs. Woods? Counsel for the appellants insists that the contract operated as a conveyance of an interest in the land to the plaintiff. With this contention we cannot agree. It is simply a contract appointing the plaintiff as the agent of Mrs. Powers, which agency was to continue, so far as the land is concerned, for a period of ten years. It is true that the contract also constitutes the plaintiff the agent of Mrs. Powers for the investment of her moneys; but, although the petition contains a count based upon the profits derived from such investments, counsel have waived those matters and are seeking to enforce only that part that relates to the land. The contract itself plainly shows the intention of the parties. It says that the party of the second part (Kimmell) shall have control of the sale of Woods Addition in Lawton, Oklahoma, for a period of ten years from the date thereof, and that he shall receive for such services twenty-five per cent. of the proceeds of such sales, after deducting current expenses of the same, and that such division shall be made on or about the first day of January of each year during the term of the contract. Kimmell was to sell the land, and he was to receive twenty-five per cent. therefor. This, it seems to us was a very liberal commission for such services, and, taking into account the allegation of the petition that the plaintiff is a man of age and business experience and was familiar with his daughter's business affairs, the contract savors of the elements of unconscionableness.

But it is alleged that there were considerations other than those named in the contract which influenced its execution. What were they? Let us briefly notice. The petition alleges that the appellant (Kimmell) loaned his daughter and James R. Wood, her former husband, money with which to prove up on his claim and with which to live on. These allegations only show acts of kindness from a father to his child, as it is not pretended that these loans were not paid back to Kimmell. There is, however, one allegation

in the petition, as follows: "The facts of plaintiff's relationship, his superior age, business experience, intimate knowledge of her affairs, and previous protective acts and services, furnished in part the motive and consideration on the part of said Alta M. Woods, for said written contract." It is quite likely that these acts of kindness on the part of Kimmell to his daughter and his superior business experience, etc., influenced in part the making of the contract, and these same considerations would have had an important bearing in giving a similar contract to one who was not a near relative. But these considerations cannot operate to confer upon Kimmell rights which the language of the contract itself does not import. The relation being that of principal and agent, the death of Mrs. Powers terminated the agency. In Bishop on Contracts, sec. 340, it is said: "The death of either party terminates the agency; that of the agent, because a dead man can perform no act; that of the principal, because his earthly existence has ceased, and in the nature of things there can be no agent without a principal. Even though the death of the principal is unknown to the agent, so that the latter executes in good faith what he believes to be a continuing agency, such execution is void." And see the Am. & Eng. Enc. of Law (2nd Ed.) page 1022: "It is a well established rule of the common law that the death of the principal puts an end to the agency, when the authority is not coupled with an interest, and no act of agency subsequent thereto is binding upon the estate of the principal, for no one can do an act in the name of one who is dead"—citing authorities.

What interest could Kimmell possibly have in the land itself? The petition alleges "that on October 17, 1902, Alta M. Woods (Powers) was the owner in fee simple, and in possession of the unsold portion of the north half of the south half of section thirty-one, in township two north, of range eleven west I. M., in Comanche county, Oklahoma, which land was platted and generally known and described as the Woods Addition to Lawton, Oklahoma, which property was then of the value of about $73,395, and

she continued to be such owner and in possession of the same up to the time of her death hereinafter mentioned." The plaintiff here states that, on the date the contract in question was entered into, the land was platted, and also that Mrs. Powers continued to be the owner of all of the land referred to in the contract until the time of her death. Hence the plaintiff in this case did not sell a single lot or foot of ground under the contract, and, as he did not claim that he paid any money or other valuable consideration for the contract, we cannot perceive how he has an interest in the land which should be recognized. He does not even allege that he expended money in preparing the addition for sale or in attempting to make sales. His allegation as to what he did under the contract is "that he has duly performed all the conditions on his part required by said contract; that immediately upon the execution and delivery of said contract he entered upon the performance of his duties and obligations thereunder, that he gave his entire time and attention to the management and control of said business," etc. The plaintiff may have given his time and attention, but he sold no lots. Under the contention of the appellant, he could have done nothing for ten years, and then exacted a one-fourth interest in the entire addition. The contract will not be so interpreted. There was a remote contingency that there might be some lots unsold at the end of ten years, and, if so, the appellant would be entitled to a one-fourth interest in them, or the proceeds therefrom; but that feature of the contract contemplated an honest effort to sell the addition. The appellant could not sit quietly by for months, and then, upon the death of the principal, claim this clause as giving an interest in the lots unsold. Equity will only give him that which, in justice, he is entitled to. The appellant may have expended his time in making investments for Mrs. Powers and in looking after the same, but, as to such services, the contract provides a different compensation, and the presumption is that he has received it.

Nor can the clause in the contract to the effect that, in the

event of the death of Mrs. Powers, the contract is to remain and be in full force and effect, be interpreted as continuing the contract of agency after the death of Mrs. Powers. When she died, the interests of the plaintiff, on the one hand, and the heirs of Mrs. Powers, on the other, became fixed. Kimmell could recover that which was due him, if anything, under it, but he could not authoritatively act longer as agent for his principal who was dead.

The petition presents no grounds for equitable relief, nor does it state an action at law for damages.

The judgment of the lower court is hereby affirmed, at the cost of the appellant.

Gillette, J., who presided in the court below, not sitting; Irwin, J., absent; all the other Justices concurring.