## ANTHONY v. BLISS *et al.*

No. 2747. Opinion Filed September 2, 1913.

(134 Pac. 1122.)

1. **TRIAL—Demurrer to Evidence—Effect.** A demurrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences or conclusions which may be reasonably and logically drawn from the evidence, and upon a demurrer to the evidence the plaintiff is entitled to every inference which the evidence, considered in the light most favorable to him, reasonably tends to prove.

2. **NEGLIGENCE—Trial—Evidence—Demurrer — Sufficiency of Evidence.** In an action for injuries caused by negligence, the court should not take the case from the jury, except where the facts are such that all reasonable men must draw the same conclusion from them.

3. **SAME—Contributory Negligence—Question for Jury.** In an action for injury caused by negligence, where the defense of contributory negligence is interposed, it is error for the court to take

the case from the jury, where there is any competent testimony, considered in the light most favorable to plaintiff, which reasonably tends to show a primary negligence.

(Syllabus by Harrison, C.)

*Error from District Court, Tulsa County;*
*L. M. Poe, Judge.*

Action by Charlotte Anthony against C. W. Bliss and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

*Hainer & Martin* and *Hindman & Woodford,* for plaintiff in error.

*Philip Kates* and *Jas. S. Ross,* for defendants in error.

Opinion by HARRISON, C.   This action was begun August 16, 1909, for damages sustained by the death of plaintiff's husband, Jas. Anthony.   Defendants C. W. Bliss and Thos. B. Bliss were the owners of a certain five-story building in the city of Tulsa.   The defendants C. E. Stewart and G. A. Stewart were the contractors who had constructed the building.   The deceased was killed while constructing a stairway in said building.   The action was brought against the owners and the contractors, charging them with negligence resulting in the death of plaintiff's husband.   A demurrer to the petition was sustained as to the contractors, but overruled as to the owners of the building, who then answered, denying any liability or any negligence, and alleging that the deceased met his death by his own carelessness and contributory negligence.   Upon the issues thus formed the cause was tried.   The court sustained a demurrer to plaintiff's evidence, took the case from the jury, and rendered judgment in favor of defendants.   From such judgment, the plaintiff appeals upon five assignments of error; the first being that the court erred in sustaining the demurrer of the defendants C. E. Stewart and G. A. Stewart and dismissing the action as to them.   The other assignments all relate to and will be considered under the one proposition, that the court erred in taking the case from the jury.   The first assignment is not urged.   Counsel for plaintiff in error opened the argument in their brief with

the following language: "We deem it necessary to discuss only the second, fourth, and fifth assignments of error, which may all be considered together." Hence the first assignment, not being urged, will not be passed upon.

A determination of the proposition that the court erred in taking the case from the jury depends upon the facts proven and the inferences which under the law may be reasonably drawn therefrom, for upon a demurrer to the evidence the plaintiff is entitled to every inference which the evidence, considered in the light most favorable to him, reasonably tends to prove.

"A demurrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences or conclusions which may be reasonably and logically drawn from the evidence." (*Edmisson v. Drumm-Flato Com. Co.*, 13 Okla. 440, 73 Pac. 958.)

"And on a demurrer to the evidence, the court cannot weigh conflicting evidence, but will treat the evidence as withdrawn which is most favorable to the demurrant." (*Id.*)

*Kimmell v. Powers*, 19 Okla. 339, 91 Pac. 687; *Cole v. Missouri, K. & O. R. Co.*, 20 Okla. 227, 94 Pac. 540, 15 L. R. A. (N. S.) 268; *Ziska v. Ziska*, 20 Okla. 634, 95 Pac. 254, 23 L. R. A. (N. S.) 1; *St. Louis & S. F. R. Co. v. Jamieson*, 20 Okla. 654, 95 Pac. 417; *Shawnee Light & Power Co. v. Sears*, 21 Okla. 13, 95 Pac. 449.

The testimony was that a five-story stone and concrete building had been nearly enough completed that it had been accepted and taken possession of by the owners, C. W. and Thos. B. Bliss, and was then being occupied by their tenants. That at this time there still remained some interior finishing to be done, part of which was the construction of a stairway, on which deceased was working at the time of the fatal accident. An elevator, operated by means of a heavy weight, had been installed, and was being used at the time. A space of about 7x17 feet running from the basement to the top of the building had been set apart for the elevator and the stairway. The elevator and weight, which swung at one end of the elevator car, occupied about 6x7 feet of this space, and the stairway, which was being constructed right along and up by the side of the elevator shaft,

occupied the remainder of the space. The partition walls between the elevator and stairway had not been put in, thus leaving the space for the stairway and the elevator shaft all open. The deceased was working on the fourth floor, putting in studding for the partition walls between the elevator shaft and the stairway on the third floor. There were to be five pieces of studding put in, one end of which rested on the third floor, and the top ends were being nailed to a 2x6-inch cross-piece, which marked the partition line between the stairway and elevator shaft on the fourth floor. That is, it ran across the space between the stairway and the elevator shaft as the base of the partition wall between them. Three of the studding had already been put in, and deceased was measuring and marking the places for the other two pieces when he was struck and killed by the descending weight.

There had been no floor laid nor any other preparation made across the stairway space for deceased to stand on while measuring the place for and nailing the top ends of the studding. But the elevator shaft and the stairway space were open beneath him down to the second floor on the stairway side, and to the ground floor on the elevator side. It was necessary, therefore, to stand either upon the 2x6, which was nailed across the space between the stairway and the elevator shaft, or stand at the end of the elevator shaft upon the floor which surrounded the open space, and reach over and across the open space, in order to do the work required of him. He had stood on this floor at the end of the elevator shaft, opposite to the weight, and to the right of the path of the elevator, and marked and nailed the top ends of three of the studding. But the point for the fourth studding being beyond his reach, and beyond the center of the 2x6 cross-piece, and nearer to the opposite side, and being unable to reach across to that point, and possibly deeming it less hazardous than to stand on the 2x6, he went around to that side, the side on which the weight ran, and from there, standing on the floor which surrounded the open space, he proceeded with the work he had been told to do. However, on this side he could not stand to the left and clear of the weight and reach

over as he had from the opposite side, because of a radiator which stood so close to the upright guide, which held the weight in its path, that he could not reach across between the weight guide and the radiator, but was compelled to stand to the right of the weight guide and reach across, thereby placing himself in the path of the weight. And while thus reaching across to measure the point for the studding to be nailed to, without warning the weight descended, striking him and killing him.

Mr. Meacham, the foreman in charge of the work, who was also inspector of buildings for the city, testified that there was no other place for deceased to have stood, without tearing up the radiator or the planks upon which the ladderway to the fifth floor stood. It is further shown that the elevator was below and the weight above him at the time of the accident, and that it was started without any warning to him. Mr. Meacham testified that he had told deceased to keep a lookout for the elevator; but there is no proof that the elevator had been running previous to the time of the accident after deceased began work. This was his first day on the job, and he had been at work only a short time, about an hour, when the accident occurred. It is not shown but what this was the first trip the elevator had made after deceased began work. This, however, of itself, is not vitally material. But it appears from the record that defendants knew of the unfinished work, and that the stairway was being constructed. In the very nature of the case the operation of the elevator while that portion of the stairway was being built was dangerous, regardless of what kind of place deceased may have had to stand upon, or where he may have stood. The studding was being put in right on the line of the path of the elevator, and no matter where the workman may have stood the work could not have been done without great danger to the workman while the elevator was in operation. The question, then, upon the entire case is whether there was sufficient evidence of negligence, considered in the light most favorable to plaintiff, to justify its submission to the jury. We think there was. The test in such cases is whether reasonable men might draw different conclusions from the same facts.

In *Kreigh v. Westinghouse & Co.*, 214 U. S. 249, 29 Sup. Ct. 619, 53 L. Ed. 984, a case very similar to the case at bar, which was reversed because the lower court had taken the case from the jury, Mr. Justice Day, in rendering the opinion, quotes and follows the rule in *Gardner v. Mich. Cent. Railroad*, 150 U. S. 361, 14 Sup. Ct. 144, 37 L. Ed. 1107, as follows:

"Questions of negligence do not become questions of law to be decided by the court, except 'where the facts are such that all reasonable men must draw the same conclusion from them, and the case is not to be withdrawn from the jury unless the conclusion follows, as matter of law, that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish.'"

*Gardner v. Mich. Cent. Railroad*, 150 U. S. 349, 361, 14 Sup. Ct. 140, 144 (37 L. Ed. 1107); *Sans Bois Coal Co. v. Janeway*, 22 Okla. 425, 99 Pac. 153; *St. Louis & S. F. R. Co. v. Copeland*, 23 Okla. 837, 102 Pac. 104. Also, *Enid City Ry. Co. v. Webber*, 32 Okla. 180, 121 Pac. 235, where, in deciding the same question, the court quotes from an opinion by Mr. Justice Lamar, in *Grand Trunk R. Co. v. Ives*, 144 U. S. 417, 12 Sup. Ct. 682, 36 L. Ed. 485, as follows:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such

that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court."

Also the doctrine that no one, although it may be his own property, and be operated on his own premises, will be permitted to maintain a perilous menace to others or operate a dangerous agency, in disregard of the lives and safety of others in the lawful exercise of their rights, is well settled in this state in *Enid City Ry. Co. v. Webber, supra, C., R. I. & P. Ry. Co. v. Stone,* 34 Okla. 364, 125 Pac. 1120, and *Connally v. Woods, ante,* 134 Pac. 869.

In the case at bar we will not say that the evidence does not show negligence for failure to give proper warning when the elevator started, nor do we deny that it might tend to show a lack of proper regard for the lives and safety of employees by the operation of the elevator at all, while this work was being done on the very line of the elevator path. We believe reasonable men might have honestly differed as to the probative force of these facts, that reasonable men might have honestly differed as to whether a failure to give any warning when the elevator started was a failure to discharge a duty owed by defendants to the workmen, or as to whether the operation of the elevator at all, while the work was being done in the very path of this dangerous agency, was a negligent disregard for the lives and safety of the workmen, and therefore believe the court erred in taking the case from the jury. And entertaining this view it follows that the court erred in finding that the deceased met his death by his own negligence.

The defendants alleged in their answer "that the accident occurring to the said Jas. F. Anthony was caused solely by his own negligence in this, that he carelessly and negligently failed to exercise ordinary or reasonable care for his own safety and protection. * . * * " This presented an issue, which, with the facts in this case, under section 6, article 23, of our Constitution, should have been submitted to the jury.

The trial court, among other things, made the following findings, to wit:

"And the court further finds that the evidence introduced on behalf of plaintiff shows that the death of plaintiff's husband and decedent was caused by his own negligence."

Section 6, article 23, of the Constitution (section 355, Williams' Ann. Ed.) provides:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

At the time this cause was tried, the foregoing section of the Constitution had not been construed by this court. Since then, however, in *C., R. I. & P. Ry. Co. v. Baroni,* 32 Okla. 540, 122 Pac. 926, *C., R. I. & P. Ry. Co. v. Beatty,* 34 Okla. 321, 126 Pac. 736, *C., R. I. & P. Ry. Co. v. Hill,* 36 Okla. 540, 129 Pac. 13, *Frederick Cotton Oil & Mfg. Co. v. Traver,* 36 Okla. 717, 129 Pac. 747, *Phoenix Printing Co. v. Durham,* 32 Okla. 575, 122 Pac. 708, 38 L. R. A. (N. S.) 1191, *Dewey Portland Cement Co. v. Blunt,* 38 Okla. 182, 132 Pac. 659, and in *C., R. I. & P. Ry. Co. v. Duran,* 38 Okla. 719, 134 Pac. 876, in a very exhaustive and well-considered opinion by Justice Williams, the question is settled that, in an action for negligence, at least where there is any competent testimony tending to show primary negligence, and where the defense of contributory negligence or assumption of risk is interposed, the issue becomes a question of fact, which shall in all cases be left to the jury for determination. Therefore the foregoing finding of the trial court was error.

The judgment should be reversed, and the cause remanded.

By the Court: It is so ordered.