## SELBY v. OSAGE TORPEDO CO.

No. 14733—Opinion Filed May 5, 1925.

Rehearing Denied Nov. 17, 1925.

1. **Evidence — Expert Testimony on Nitroglycerine Explosion—Qualifications of Chemist.**

A witness who testifies that he has studied chemistry in the colleges, had graduated in pharmacy in the St. Louis School of Pharmacy, took an extra year in chemistry, and taught senior pharmacy for five years in the University, and states that he knows how nitroglycerine is made and its general properties, as outlined in the textbooks on the subject, is not disqualified from giving his opinion as to what will cause nitroglycerine to explode, in answer to a hypothetical question by reason of the fact that he has had no experience in handling it and manufacturing it.

2. **Negligence—Sufficiency of Proof.**

Where there is any competent evidence tending to show negligence on the part of defendant and injury to plaintiff, as a proximate result, it is error to sustain a demurrer to the evidence.

3. **Explosives—Personal Injury—Negligence—Res Ipsa Loquitur.**

The rule of res ipsa loquitur is applicable to an accident resulting in injury to a stranger on his own premises from an explosion of nitroglycerine being transported by automobile truck along the road near his dwelling place. The explosion and injury, as the result, being proved, the presumption of negligence is indulged and the burden, showing otherwise, shifts to the defendant.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Osage County; Jesse J. Worten, Judge.

Action by Roxel Selby, an infant, by Os-

car Selby, her next friend, against Osage Torpedo Company, for damages. Judgment on demurrer to the evidence for defendant, and plaintiff appeals. Reversed.

L. F. Roberts, for plaintiff in error.

H. H. Montgomery, S. J. Montgomery, A. M. Widdows, and Frank T. McCoy, for defendant in error.

Opinion by THREADGILL, C. The appeal in this case is from a judgment of the district court sustaining a demurrer to plaintiff's evidence and denying any relief asked for.

Plaintiff was a minor and brought her action against the defendant by next friend. She alleged in her petition that the defendant was a corporation engaged in the business of manufacturing, transporting, and delivering nitroglycerine, torpedoes, and other high explosives, in Osage county; that on or about September 19, 1919, defendant's employe, while in its employ driving a torpedo wagon from the factory loaded with nitroglycerine, belonging to the defendant, and while driving along a road in said county, in a negligent and fast manner over rough roads, the nitroglycerine exploded, as a result of the negligent and fast driving over the rough road; that said explosion injured the plaintiff by burning her about the head and face and eyes; that her face became swollen and closed her eyes; that her eyes were made weak, causing her to lose a year in school; that her eyesight was still bad; that her nervous system was shocked and she suffered from said shock and had not recovered from the same—for all of which she asked damages. The defendant's answer consisted of a general denial, after admitting its corporate existence and being in the "nitroglycerine business." On March 15, 1923, the cause was tried to a jury and at the close of plaintiff's evidence the defendant demurred to the same, which was by the court sustained, and judgment was given the defendant, and plaintiff appealed by petition in error and case-made, urging two assignments of error as follows:

(1) "The court erred in refusing to permit the witness C. C. Martin to answer the question: From your experience that you have received from books and your knowledge of experiments made by you and from your observation of experiments made by other persons with nitroglycerine, can you state what will cause it to explode?"

(2). "That the court erred in sustaining the demurrer to plaintiff's evidence."

1. There was no dispute as to the fact of the explosion and the time and place of its occurrence. It was the contention of the plaintiff that the nitroglycerine exploded from the jolt of the truck in being run rapidly into a gully or swag across the road, which was about 8 inches deep and 18 inches wide. The defendant contended, as shown by counsel's opening statement, that the swag across the road into which the truck ran was over a high power gas pipe line and there was a leak of gas at that point, and that a spark from the truck engine ignited the gas and set the nitroglycerine off. The evidence tended to show that the driver of the truck was driving and traveling at about 25 to 35 miles an hour at the time of the explosion; that the truck was loaded with about 250 quarts of the nitroglycerine; that the ditch was across the road as above described; that the gas pipe line was under the ditch but not exposed. Plaintiff undertook to prove that the cause of the explosion was the jolt when the truck struck the ditch, by showing that such was the nature of nitroglycerine that it was subject to be exploded in this manner, and for this purpose the witness, C. C. Martin, was called and questioned as follows:

"Q. What experience have you had in handling nitroglycerine? A. In handling nitroglycerine itself, I have had no experience in handling nitroglycerine itself, the only thing is my knowledge of nitroglycerine, the chemistry of nitroglycerine. Q. Gained from what? A. From text-books in chemistry and study in the colleges that I have graduated from and the instruction that I have given in chemistry and the instructions that we got from the wholesale drug house in the drug store. We have our instructions as to how to handle it and take care of it by handling the crude product, I have never handled it and never cared to. Q. From your instructions that you have received from the books and from your knowledge of experiments made by you and from your experience of experiments made by other persons with nitroglycerine, can you state what will cause nitroglycerine to explode? Mr. McCoy: To which the defendant objects for the reason that the witness is not qualified, incompetent, irrelevant and immaterial and calling for a conclusion of the witness, and for the further reason that the witness has shown by his answer that he has never handled nor had experience with nor studied the kind of nitroglycerine involved in the present controversy, but had only handled diluted commercial nitroglycerine used in the drug business. The Court: Sustained Mr. Roberts: Exception. That's all."

Prior to these questions and answers the witness had stated that he was a graduate

of the St. Louis School of Pharmacy, took an extra year in chemistry, and was registered in Texas, Missouri, and Oklahoma by examination; that he taught senior pharmacy in the University for two years and had chemistry to that extent. He stated further that he knew how nitroglycerine was made, and its general properties as outlined by the text-books.

We think the testimony of the witness was sufficient to show his knowledge of the science of nitroglycerine and qualified him to answer the question asked as to what would explode it.

C. J., volume 22, page 520, note a, lays down the rule as follows:

"It is usually considered not necessary, in order to qualify as a skilled witness one who has the necessary professional, scientific, or technical training, that he should ever have had much, or indeed any opportunity, in his own experience, to test the accuracy of his judgment."

This rule is supported by citations from the courts of nearly all the states in the Union.

In the case of Bradford Glycerine Co. v. Kizer, 113 Fed. 894, the Circuit Court of the United States for the Northern District of Ohio states the rule as follows:

"A professor of chemistry, otherwise qualified as an expert is not disqualified from giving his opinion as to the cause of an explosion of nitroglycerine, in answer to a hypothetical question, by the fact that he has had no practical experience in its manufacture."

See, also, the following cases: The Congress & Empire Spring Co. v. Ann P. Edgar, 99 U. S. 643-658, 25 L. Ed. 487; Scott v. Astoria R. R. Co. (Ore.) 72 Pac. 594; German Life Ins. Co. v. Rosslewin (Colo.) 51 Pac. 488; Great Western Coal & Coke Co. v. Malone, 39 Okla. 693, 136 Pac. 403.

2. The next contention is that the court erred in sustaining the demurrer to the evidence. The record discloses that counsel for defendant, in his opening statement to the jury, admitted that the driver of the torpedo wagon was the driver of the defendant, in saying "our driver was not driving fast"; also admitted the fact of the explosion, and contended that it was caused by sparks from the car muffler coming in contact with the leak of gas from the 16-inch high pressure gas line under the swag in the road. The undisputed evidence tended to show that the car was loaded with about 250 or 300 quarts of nitroglycerine belonging to the defendant, and was being transported across the country in the regular course of its business; that the driver was a careless and reckless driver; that he was going at the rate of from 25 to 35 miles an hour, and over rough country roads, and along a road through the field of plaintiff's father at the time the car struck the swag and blew up; that the explosion of the nitroglycerine produces a poison injurious to persons within its range; that the plaintiff was standing back of her home and a little over 100 yards from where the explosion occurred; that it was so violent as to blow the wagon and the driver into bits and to destroy vegetation for some distance around the place of the accident; that it shook and shattered the dwelling house from top to bottom and broke out its windows, and, on the opposite side of the house, where the plaintiff was standing, it cracked the cement of the cellar and jarred her until she exclaimed that she was killed, and started to fall, and was caught in the arms of her mother; that soon thereafter plaintiff's face become swollen, closing her eyes; that her hair and eyebrows were found to be singed; her eyes became inflamed, and she was very nervous, and on account of her weakness of eyes could not go to school for about a year; that she has suffered great nervousness, and inflammation of the eyes ever since.

This testimony was sufficient to make out a prima facie case of negligence on the part of the defendant, resulting in injuries to plaintiff, and the same was good against a demurrer. Anthony v. Bliss, 39 Okla. 237, 134 Pac. 1122; Littlejohn v. Midland Valley R. Co., 47 Okla. 204, 148 Pac. 120; Prickett v. Sulsberger & Sons Co., 57 Okla. 567, 157 Pac. 356; Folsom-Morris Mining Co. v. DeVork, 61 Okla. 75, 160 Pac. 64.

3. Plaintiff further contends that the nature of the explosion, in the case, brings the question of negligence within the rule of res ipsa loquitur. The nature of this rule and reasons for it are discussed in a nitroglycerine explosion case (Judson et al. v. Giant Powder Co., 40 Pac. 1020) in which the Supreme Court of California proposes the question, "Does the proof of the explosion draw with it the presumption of negligence sufficient to establish a prima facie case for recovery?" And after discussing the conflict in the authorities as to where the rule should be applied, the court states the reasons for the rule and the rule itself in the following language:

"The presumption arises from the inherent nature and character of the act causing the injury. Presumptions arise from the doctrine of probabilities. The future is measured and weighed by the past, and presumptions are created from the experience of the past. What has happened in the past. under the same conditions, will probably happen in the future, and ordinary and probable results will be presumed to take place until the contrary is shown. Based upon the foregoing principles, a rule of law has been formulated, bearing upon a certain class of cases, where damages either to person or property form the foundation of the action. This rule is well declared in Shearman and Redfield on Negligence (section 60); 'When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence. in the absence of explanation by the defendant, that the accident arose from want of care.'"

In support of the rule the decision cites the leading cases of both England and of this country. See, also, Bradford Glycerine Co. v. Kizer, 113 Fed. 894. This court has also approved the same rule. Muskogee Electric Traction Co. v. McIntyre, 37 Okla. 684, 133 Pac. 213; Anthony v. Bliss, 39 Okla. 237, 134 Pac. 1122; Sand Springs Park v. Schrader et al., 82 Okla. 244, 198 Pac. 983.

From these authorities we think the rule of res ipsa loquitur is applicable to the facts connected with the explosion in this case, and the demurrer to the evidence should not have been sustained on the ground that plaintiff failed to prove whether or not the explosion resulted from the jar of running the truck into the swag across the road.

We, therefore, recommend that the cause be reversed and a new trial granted.

By the Court: It is so ordered.

Note.—See under (1) 22 C. J. p. 520. (2) 25 C. J. p. 210. (3) 25 C. J. p. 205; anno. 6 L. R. A. (N. S.) 800; 20 R. C. L. pp. 188, 189, 195; 3 R. C. L. Supp. 1043; 4 R. C. L. Supp. 1345, 5 R. C. L. Supp. 1090.